Frank A. Rieker, Appellant, *v.* The City of Lancaster;
Edward F. Frailey, Superintendent of Waterworks
of said City of Lancaster; Adam J. Auxer, C. S. Eris-
man, Joseph R. Trissler, David Rettew, Conrad Moser
and D. H. Miller, Members of the Joint Water Com-
mittee of the Councils of said City of Lancaster; and
E. S. Smeltz, Mayor of said City and Chairman, ex
officio, of said Water Committee.

*Water rents—Relation of municipality as vendor of water.*

Water rents are not taxes; the obligation to pay for the use of water is
based upon an expressed or implied contract or license; there is no obli-
gation on the consumer's part to take the water, but if he does take it he
thereby obliges himself to pay for it according to the terms and conditions
made public, or according to such expressed contract as he may have had.
A city may adopt such rules in regard to the use of water or payment
therefor, as the municipal authorities shall deem expedient.

*Equity—Injunction—Irreparable damage—Finding of court below—Ap-
peals.*

The court below having found that the price of five cents per one thou-
sand gallons is inherently fair, and that no unjust discrimination exists and
there being evidence to sustain this finding, the appellate court will not
review such finding and an allegation of irreparable damage has nothing
to sustain it and the right to an injunction and decree in equity cannot be
said to have been established.

*Municipal law—Authority and discretion to fix water rents.*

The city of Lancaster being authorized to sell water to its citizens under
legislation and municipal requirements to the effect that rates of prices
shall be uniform, and that contracts with citizens for the use of water shall
be under equal and general regulations fitting the occasion, and at rates to
be fixed by the water committee of councils, a joint resolution of councils
will be binding which fixes the rates for certain classes of consumers at a
fixed annual amount, irrespective of quantity consumed and of certain
others on a basis of quantity, ascertained by measurement and charged for
at a certain price per thousand gallons.

Absolute equality among all citizens is not required; a reasonable dis-
cretion is lodged in the water committee as to the rental to be paid.

Argued Nov. 12, 1897. Appeal, No. 145, Oct. T., 1897, by
plaintiff, from decree of C. P. Lancaster Co., Equity Docket,
No. 3, page 189, dissolving preliminary injunction and dismiss-

ing plaintiff's bill. Before RICE, P. J., REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Hearing on bill, answer and proofs. Before BRUBAKER, J.

It appears from the bill, answer and proofs that the proceedings below were begun by bill in equity which enjoined the city of Lancaster and its municipal authorities operating and controlling and directing the waterworks, from imposing charges of water rents by measured meter rates upon certain consumers, while, at the same time, they charged other and different rates and rentals to other consumers of the same class; and to enjoin them from cutting or stopping off the supply of water to the plaintiff's premises. There was an answer filed, a hearing had, and, upon final hearing, the court dissolved the injunction and dismissed the plaintiff's bill.

It appears that the municipal authorities changed the schedule of water rents from a fixed schedule so as to apply a measurement to certain classes of the community, among them the plaintiff who was a brewer. By this change in measurement plaintiff was charged with something like 14,500,000 gallons at the rate of five cents per thousand gallons, amounting in all to $736.50 for three fourths of the year 1896.

It also appears that the authorities had not applied the meter system to all manufacturers and large consumers, it being alleged by the city that they had had neither the time nor the money to introduce the system universally, and that in some cases its introduction was postponed by reason of existing contracts with consumers. It appears also that the new schedule was approved by joint resolution of councils and not by ordinance signed by the mayor, it appearing on behalf of the city that the water committee had the power under general ordinances to make changes in the schedule even without special approval by councils.

The court below found as a fact that the charge imposed of five cents per thousand gallons was a fair and reasonable charge, and that the new schedule was an equal and equitable regulation for the supply of water within the city of Lancaster. Also that considering the large consumption of water by the plaintiff at his brewery the charge of five cents per thousand gallons was not an excessive charge.

The court also found as a conclusion of law that the point taken by the learned counsel for the plaintiff that the concurrent resolution of councils was illegal, because it had not the mayor's approval of it, was not seriously pressed at the argument, and therefore, it hardly needs further consideration, except to say that section 20 of the Act of 1867, P. L. 790, makes the mayor's approval unnecessary.

The court also found as a conclusion of law " that there has been no evidence adduced by the plaintiff to show either want of good faith or acts of oppression on the part of city authorities in the adoption of the present schedule of water rents. On the contrary, as we have said, the meter rates are just and equitable, and are in favor of large consumers, among whom the plaintiff is included. The facts in this case clearly demonstrate the fact that should the owners of private residences generally adopt the meter system at the same rates, which they are privileged to do and which they are likely to do on account of the cheapness of its rates, it would very largely reduce the revenue of the water department and require a fixing of even larger rates to meet the expenses of running and maintaining the plant, unless the great waste of water is checked by the city authorities. The introduction of the meter system under the new schedule, when in complete operation, will doubtless reduce the waste to a minimum. This, as we understand, the city authorities are doing as rapidly as practicable, considering the present condition of city finances.

" We are of the opinion that the plaintiff has not shown himself entitled to the relief prayed for in the bill, and, therefore, the bill should be dismissed at the cost of the plaintiff for want of equity." Plaintiff appealed.

*Errors assigned* among others were (1) in making a decree denying the injunction and prayer of complainant. (4) In not finding as a matter of fact, that " the schedule reported by the water committee on February 6, 1895, was never adopted by ordinance or joint resolution of councils, and that it was never approved by the mayor of the city." (7) In its finding of fact, No. 15, as follows : " The said rate of five cents per thousand gallons, meter rate for breweries fixed by said schedule of . February 6, 1895, is a fair and reasonable charge, and said

schedule is an equal and equitable regulation for the supply of water to the consumers within the city of Lancaster." (8) In its finding of fact and law No. 16, as follows: "The water rents charged the plaintiff by meter measurements, are much less than the rents charged to other consumers and average consumers under the fixed schedule rates, notably, Farnum & Company's cotton mills and a number of private residences." (16) In its conclusion of law that a concurrent resolution of councils had been passed, establishing meter rates for the consumption of water in the city of Lancaster. (17) In finding as a conclusion of law that the mayor's approval of a joint resolution or ordinance of councils was not necessary to establish meter rates in the city of Lancaster. (18) In finding as a conclusion of law that " the inequality complained of by the plaintiff is not due to the provisions of the new schedule, but rather to the failure of the water superintendent or the city authorities to enforce the meter rates against all large consumers which the schedule is intended to cover." (20) In finding as a conclusion of law that " the water rent charge in question is just and equitable." (25) In its conclusion of law that the plaintiff " has not shown himself entitled to the relief prayed for in the bill, and, therefore, the bill should be dismissed at the cost of the plaintiff for want of equity."

*D. M'Mullen* and *W. U. Hensel*, with them *J. Hay Brown*, for appellant.—The city has no right to impose upon F. A. Rieker's brewery, or any or all the breweries of Lancaster city using water for steam power for the making of beer and the washing of barrels, a rate per thousand gallons, meter measure, and other manufacturers or large consumers a fixed schedule rate, irrespective of the quantity consumed.

It cannot make unwarranted discrimination in particular cases, nor arbitrary charges with the penalty of forfeiture of the right to use the water : Parker v. Boston, 83 Mass. 361 ; Young v. Boston, 104 Mass. 95 ; Holman v. Pleasant Grove City, 8 Utah, 78 ; State v. Jersey City, 45 N. J. L. 246.

A corporation which derives its existence and its powers and franchises from the state is more directly accountable to the state than a natural person for the exercise of good faith in the conduct of its business and for the reasonableness of its charges.

A court of equity will exercise authority to restrain illegal and oppressive conduct on the part of a corporation in its dealings with the public: Brymer v. Water Co., 179 Pa. 231, 249.

The furnishing of water to the public is like the furnishing of light and heat for domestic purposes—a public use: Mills on Eminent Domain, par. 18.

The inhabitants are entitled to the use of water on complying with reasonable regulations: Dayton v. Quigley, 29 N. J. Eq. Rep. 77; Dillon on Municipal Corporations, secs. 319, 320; High on Injunctions, sec. 787.

Courts will declare ordinances to be void that are oppressive in character: 1 Dillon, sec. 321.

Municipal ordinances which discriminate against one class of persons engaged in business and in favor of another are void, and will be so pronounced by the courts: Sayre Bor. v. Phillips, 148 Pa. 482; Shamokin v. Flannigan, 156 Pa. 43.

*J. W. Brown*, with him *A. F. Shenck*, for appellees.

OPINION BY PORTER, J., March 21, 1898:

This case involves the right of the city of Lancaster to put in force a schedule of rates for furnishing the citizens with water, by which certain consumers are required to pay a fixed annual amount irrespective of quantity consumed and certain others to pay on the basis of quantity, ascertained by measurement and charged for at a certain rate per 1,000 gallons.

The novelty of the question raised and the earnestness and ability with which it has been presented by counsel, lead us to add at some length our confirmation of what has already been well said by the court below.

The seventh section of the act of 1836 provides that "The said mayor, aldermen and citizens of Lancaster in select and common councils assembled, shall have full power and authority to pass, ordain and enact all laws and ordinances necessary to enable them to convey the water through the city in all directions and to fix hydrants or fire plugs wheresoever they may deem proper and to fix and determine the uniform rates of prices to be paid by the citizens for the use of the said waters," etc.

Pursuant to this act the following ordinance was passed by the councils of the city of Lancaster, on December 6, 1836:

"That as soon as a copious supply of water shall be introduced into the reservoir and ready for distribution the water committee shall enter into contracts with any person who may desire the use of the water, under such general and equal regulations as, fitting to the occasion, may be established and at such rents as shall be fixed upon by the water committee."

Under and by virtue of this ordinance the said water committee made contracts for, and for a long time supplied, water under a schedule of rates based upon a fixed annual payment by the consumers.

On February 5, 1895, the said committee adopted a new schedule of rates and reported it to the city councils who approved the report. By the new schedule certain classes of large consumers were to be charged at the rate of 5 cents per thousand gallons of water used, while other consumers were left as theretofore, on a basis of an annual charge without measurement of the actual amount consumed. The new schedule further provided that "Whenever a consumer shall prefer to pay the cost of such meter as shall be approved by the Superintendent of Water Works, together with the cost of putting in and of maintenance, rather than pay schedule rates, a meter will be put in, provided, however, that in no case where a meter is used shall the annual charge be less than ten dollars."

The plaintiff is a brewer and uses the city water for stationary engines and general brewery purposes. Prior to the adoption of the new schedule he was paying a fixed sum per annum. By the said schedule, he (as well as all brewers) was required to pay the meter rate of 5 cents per thousand gallons. A meter was put in his place of business and quarterly bills for the quantity of water used charged at said meter rate were rendered June 30, 1896, September 30, 1896, and December 31, 1896. The bills thus rendered have not been paid, and this proceeding in equity has been begun to enjoin the city from collecting the amount of the said bills and from cutting off the water from the premises of the plaintiff.

The plaintiff contends that the charge of five cents per thousand gallons is unreasonable and excessive. This is a question of fact. The learned judge of the court below has found that "the said rate of five cents per thousand gallons meter rate for breweries as fixed by said schedule of February 6, 1895, is a

fair and reasonable charge." Such a finding as this will not be disturbed by the appellate court unless some flagrant mistake is shown to have been made. Here the finding is sustained by other portions of the opinion, and an examination of the testimony discloses nothing which convicts the lower court of error. This branch of the case gives us little difficulty and requires no further discussion.

The appellants contend further, that the new schedule is not enforceable, inasmuch as the report of the water committee while approved by both branches of councils was not approved by formal ordinance, approved by the mayor. It is urged that the approval of the new schedule by councils was not a mere resolution, but was attempted and necessary legislation which could only be made effective by the mayor's approval. It was not in our opinion such legislation. It was a submission by a committee (already having full power to act) of its report indicating its intended action, for the purpose of obtaining the sense of the legislative body as to the propriety of such action, and comes easily within the clause of the act of 1867 amending the Lancaster City Charter, in which it is provided that, " the councils may transact business by an order or resolution." Quoting a sentence from the opinion of the Supreme Court in Shaub v. Lancaster City, 156 Pa. 362, this adoption of the report of the water committee changing the schedule of rents " was an act done in the transaction of the ' business ' of the city that was not intended to bind the city longer than the condition which suggested its adoption should continue."

If, however, the action of councils in approving the report is to be regarded as attempted legislation and void for want of the concurrence of the mayor, it does not aid the plaintiff's contention inasmuch as by the previous ordinance above quoted, full power was given to the water committee to establish and fix rentals fitting to the occasion, and the power thus given has not been withdrawn.

The substantial matter of controversy however is, that neither the city nor the water committee has the right to impose upon the plaintiff or upon all breweries of the city, a rate per thousand gallons meter measure while permitting other manufacturers or large consumers to pay a fixed schedule rate irrespective of the quantity used.

The legislative and municipal requirements as set forth, supra, are that the "rates of prices" shall be uniform and that contracts with citizens for the use of water shall be under "general and equal regulations fitting the occasion," and at rents fixed by the committee.

There is nothing here requiring absolute equality among all citizens, in the charge to be made for the use of the water. There is a reasonable discretion lodged in the water committee as to the rentals to be paid.

It must not be forgotten that water rents are not taxes.    The latter are imposed by an act of sovereignty, and payment of them is compulsory.    The obligation to pay for the use of water is based upon an expressed or an implied contract or license: Silkman v. Water Commissioners, 152 N. Y. 327.

There is no obligation on the consumer's part to take the water, but if he does take it he thereby obliges himself to pay for it according to the terms and conditions made public, or according to such expressed contract as he may have made: Brass v. Rathbone, 153 N. Y. 435; Vreeland v. Jersey City, 37 N. J. Eq. 574.

The position of a municipality in this regard is well stated in Western Saving Fund Society v. Phila., 31 Pa. 175, where Chief Justice LEWIS says : " The supply of gas light is no more a duty of sovereignty than the supply of water.    Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means.    If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good.    The whole investment is the private property of the city, as much so as the lands and houses belonging to it. . . . . But if the grant was for the purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation quoad hoc is to be regarded as a private company.    It stands on the same footing as would any individual or body of persons, upon whom the like special franchises had been conferred."

This is followed in Western Saving Fund Soc. v. Phila., supra, by this language by Mr. Justice STRONG referring to the city of Philadelphia:

"As a local sovereign it had no authority to enter into the business of manufacturing and selling gas, for its sovereignty did not extend to such subjects any more than it did to almost any other manufacture. It is true a municipal corporation is not bound by any engagement which prevents a discharge of the duties imposed upon it by its organic law, for the plain reason that such engagements are contrary to the law.. But when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates, but contracts, and is as much bound by its engagements as is a natural person."

Mr. Justice PAXSON, referring in Wheeler v. Phila., 77 Pa. 338, 354, to the language above quoted, says :

"This was of course predicated of what was then before the court, viz., whether the city in violation of its contract with its bondholders, could take the management of the works out of the hands of the trustees. While it is no part of the ordinary and necessary duties of a municipal corporation to supply its citizens with gas and water, it is nevertheless true that it may lawfully do so. Without desiring to enter into a nice discussion of the source of its right or power to do this, the fact that it has been exercised in this and many other states for a long time unchallenged, exists."

Later the same distinguished jurist adopts the language of the earlier cases in Girard Life Ins. Co. v. Phila., 88 Pa. 393. He says : "The complainants concede the complete power of the city to make any conditions precedent to supplying the citizens with water. The supplying of water and gas to a city is not a municipal duty. Hence when the city undertakes to do so, it acts not by virtue of any rights of sovereignty, but exercises merely the functions of a private corporation : Western Saving Fund Society v. The City, 31 Pa. 175 ; Wheeler v. The City, 77 Pa. 338. The introduction of water by the city into private houses is not on the footing of a contract but of a license which is paid for : Smith v. The City, 81 Pa. 38. It may very well be that when a license has been given by the city to the owner of a house to use the water, such license may not be withdrawn arbitrarily or from mere caprice. But it is equally clear that the city may adopt such rules in regard to the use of the water and the payment therefor, as the municipal authorities shall deem expedient."

In the case before us there is no unjust discrimination disclosed. All those users of water in the same class with the plaintiff, namely, brewers, are put on the same terms as he. By this classification the uniformity of the rates of prices is maintained. The price per 1,000 gallons being reasonable, a charge based upon measurement is inherently the fairest. The difference between the rate the plaintiff will annually be required to pay, and that paid by any other given consumers under the arbitrary former schedule, cannot in the nature of things be ascertainable, since the consumption by the latter is unknown. No greater inequality will arise under the new schedule than was entirely possible and more than probable under the old. Absolute uniformity or equality is not possible, but the option given to all consumers under the new schedule, to pay for the water used, on the basis of measurement, is the nearest practical approach to it.

Further than this, the evidence does not convince us that the plaintiff here is in fact injured. The finding of the court below is that "the water rents mentioned in paragraph 11 (supra), charged the plaintiff by meter measurements, are much less than the rents charged to other consumers and average consumers under the fixed schedule rates." There seems to be sufficient evidence to sustain this finding. In view of it, the allegation of irreparable damage has nothing left to stand upon, and the right to an injunction and decree in equity is gone.

The fact that the city of Lancaster is charging more than the actual cost of furnishing the water, does not relieve the plaintiff from the payment of the water rent for which he has agreed to pay, nor is there anything illegal or reprehensible in the city so operating the waterworks as to make a profit thereon.

The case of Wagner v. City of Rock Island, 146 Ill. 139, presents facts strikingly similar to those before us, and is an authority for the conclusions herein expressed.

The assignments of error are dismissed and the decree of the court below is affirmed.