# Barnes Laundry Co., Appellant, *v.* Pittsburgh et al.

*Municipalities—Public service companies—Municipal operation of water plant—Rates—Excessive rates—Equity—Injunction—Act of July 26, 1913, P. L. 1374—Constitutional law—Title of act—Classification.*

1. Municipal corporations are not within the term "public service companies" as used in the Act of July 26, 1913, P. L. 1374; nor are they embraced in its rate-making provisions; nor are they

subject at all to the jurisdiction of the Public Service Commission beyond the "limited extent" referred to in the title and provided for in certain parts of the act.

2. The authorities which hold that when a city undertakes to supply water it acts "not by virtue of any right of sovereignty, but exercises merely the functions of a private corporation" have no application to the construction of the Act of July 26, 1913, P. L. 1374.

3. The classification, made by the Public Service Company Act, of corporations doing public service, into (1) corporations other than municipal, and (2) municipal corporations, does not violate the constitutional inhibition against special legislation.

4. The fact that the act contains a provision to the effect that if any particular part shall be declared unconstitutional, such decision shall not affect other parts thereof, is no justification for reading the law as though the alleged unconstitutional parts— working the division of corporations into different classes—were not contained therein, thus placing municipal corporations rendering the same kind of service as public service companies in a general class with the latter, and, by this method of construction, or elimination, subjecting the former to all the terms of the act.

Springfield Gas & Electric Co. v. City of Springfield, vol. 15, No. 8, Rate Research, page 1, disapproved.

5. When rendering the same character of service as public service companies, municipalities for many purposes must be considered and treated like private corporations; but, for purposes of supervision over their internal management, they may justifiably be put on a different basis from ordinary public service companies; for, though engaged in rendering the same kind of service as the latter, and entitled to derive therefrom a just gain, municipalities are supposed to act primarily for the public good—not to earn dividends; moreover, they are financed along quite different lines from other corporations, and managed by popularly elected officers, who are presumed to act for the public weal, and, when they fail to do so, may be turned out by their constituents at stated intervals. These considerations account for and justify the omission of municipal corporations from the general application of our Public Service Company Act.

*Municipalities—Cities of the second class—Water rents—Rates —Assessment—Board of water assessors — Remedy — Appeal to courts—Act of June 15, 1915, P. L. 976.*

6. Where the council of a city of the second class levies a water rate in pursuance of the Act of June 15, 1915, P. L. 976, and the board of water assessors assesses the water rents according to such

rate, a citizen who is aggrieved because the rate is excessive and discriminatory, has no remedy at law by an appeal to the court as provided by the act, inasmuch as the appeal, if successful, would only result in a reassessment, and not in a change of the rate.

7. Although the courts are given jurisdiction on appeal to make "such order and decree touching the matter complained of as may seem just and equitable," this warrant of authority is necessarily limited to a revision of those matters which may be legally "complained of" to the full board of water assessors, i. e., errors in assessments which that body has power to redress, by reduction or otherwise.

*Municipalities—Water rates—Discriminatory rates—Remedy-at-law—Equity—Injunction—Act of June 16, 1836, P. L. 785—Estoppel—Duress—Laches—Constitutional law—Taking property—Due process of law.*

8. Under the Act of June 16, 1836, P. L. 785, a court of equity has jurisdiction to entertain a bill by a citizen who complains that a municipality has unlawfully arrogated to itself the right to make and enforce unreasonable and discriminatory water rates to his prejudice.

9. A city operating a legalized monopoly, such as a water plant, cannot give undue or unreasonable preference or advantage to, or make unfair discrimination among, customers any more than a private corporation similarly situated, nor is it to be presumed that the Act of Assembly of June 15, 1915, intends indirectly to confer such legally discountenanced powers.

10. A statute making water rates, legislatively fixed, conclusive would deprive the parties affected of property and due process of law, and so be unconstitutional.

11. If a city threatens to enforce an unreasonable and discriminatory water rate, by cutting off a citizen's water supply, it will be enjoined.

12. In such a case the plaintiff is not bound to wait until the city files a lien for its water rents, and then depend upon a sci. fa. Such a remedy at law is inadequate.

13. Although equity ordinarily will not entertain a suit where redress may be had at law, yet equitable jurisdiction does not depend entirely upon the want of a common law remedy, but may be sustained on the ground that, under given circumstances, it is the most convenient and efficient road to adequate relief.

14. Neither by ordering nor using a necessity like water, from a plant which enjoys a monopoly of supply, can one be held estopped—on the theory of implied contract or otherwise—from a right, in a due and proper proceeding, to question either the reasonableness of the ordained rate or the justness of its application,

for rates unlawfully exacted are treated in law as though assented to under duress.

15. But where a city has, with plaintiff's knowledge, assessed excessive and unreasonable water rates for three years and in part collected the same, and the plaintiff has delayed until the third year to file a bill for an injunction and to secure a refunding of what he has paid, he is guilty of laches, and his bill will be dismissed in so far as it relates to the first two years.

Mr. Justice FRAZER dissents.

Argued October 14, 1919. Appeal, No. 41, Oct. T., 1919, by plaintiff, from decree of C. P. Allegheny Co., July T., 1918, No. 1624, dismissing bill in equity in case of Barnes Laundry Company v. City of Pittsburgh, a Municipal Corporation, Charles S. Hubbard, Treasurer of the City of Pittsburgh; John Swan, Jr., Director of the Department of Public Works of the City of Pittsburgh. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Decree reversed in part.

Bill in equity for an injunction and for a refunding of excessive water rates. Before CARPENTER, J.

The court sustained a demurrer and dismissed the bill. Plaintiff appealed.

*Error assigned* was decree dismissing the bill.

*J. B. Eichenauer,* with him *W. W. Stoner,* of *J. M. Stoner & Sons,* for appellant.—A municipal corporation may act in a dual capacity. The powers which are granted it for public purposes exclusively and in the exercise of which it acts as the instrumentality and agent of the sovereign power of the State belong to the municipality in its political or governmental character, while the powers which are granted to it for purposes other than those political and governmental belong to the municipality in its proprietary or private character, and, in furnishing water to its inhabitants, the municipality acts in its proprietary capacity: Western Saving

Fund Society v. Phila., 31 Pa. 175; Taylor v. Phila., 261 Pa. 458; Girard Life Ins. Co. v. Phila., 88 Pa. 393; Baily v. Phila., 184 Pa. 594; Jolly v. Monaca Borough, 216 Pa. 345; Com. v. Casey, 231 Pa. 170.

With respect to the powers granted in its private or proprietary character, a municipal corporation is to be regarded as a private corporation with corresponding powers and duties, and the council of the City of Pittsburgh therefore, when fixing the water rates, is not legislating but acting in the capacity of a board of directors of a private corporation and with corresponding powers and duties: Western Saving Fund Society v. Phila., 31 Pa. 175; Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478; Bower v. United Gas Imp. Co., 37 Pa. Superior Ct. 113; Girard Life Ins. Co. v. Phila., 88 Pa. 393; Jolly v. Monaca Borough, 216 Pa. 345; Com. v. Casey, 231 Pa. 170; Muncy Electric Co. v. Peoples Elec. L., H. & P. Co., 218 Pa. 636.

Water rents are in no sense taxes but are simply a charge for a commodity: Jolly v. Monaca Borough, 216 Pa. 345; Rieker v. Lancaster, 7 Pa. Superior Ct. 149; Wagner v. City of Rock Island, 146 Ill. 139; Silkman v. Board of Water Commissioners, 152 N. Y. 327.

At common law (a) rates charged for service rendered in any public business, including the supply of water to the public, either by a private water company or by a municipal corporation, must be reasonable, and (b) the question of reasonableness of an established rate is a judicial question to be determined by the court, and this common law principle is applicable to the City of Pittsburgh when supplying water to the public: Munn v. People of Illinois, 94 U. S. 113; Dow v. Beidelman, 125 U. S. 680; Jolly v. Monaca Borough, 216 Pa. 345; City of Chicago v. Northwestern Mut. Life Ins. Co., 218 Ill. 40; Wagner v. City of Rock Island, 146 Ill. 139; Interstate Commerce Com. v. C. N. O. & T. P. R. R. Co., 167 U. S. 480; Reagan v. Farmers L. & T. Co., 154 U. S. 362; Chicago, etc., Ry. Co. v. Minnesota, 134 U. S. 418.

Section 1 of the Act of May 12, 1911, P. L. 295, as amended by the Act of June 15, 1915, P. L. 976, does not authorize the City of Pittsburgh to fix its water rents at more than a reasonable rate or give it any greater power in establishing its rates than a private company rendering a like service would have at common law: Hammett v. Phila., 65 Pa. 146; Washington Avenue, 69 Pa. 352; Morewood Avenue, 159 Pa. 20.

The facts averred in the bill and admitted by the demurrer show an unjust and unlawful discrimination against the plaintiff company in the application of the metered water rates: Baily v. Fayette Gas Fuel Co., 193 Pa. 175; Mercur v. Media Electric L., H. & P. Co., 19 Pa. Superior Ct. 519.

A court of equity has jurisdiction over the matters set up in the bill to grant the relief prayed for: Penn Iron Co. v. City of Lancaster, 25 Pa. Superior Ct. 478; Johnston v. Price, 172 Pa. 427; Bussier v. Weekey, 11 Pa. Superior Ct. 463; Corbet v. Oil City Fuel Supply Co., 21 Pa. Superior Ct. 80; Reagan v. Farmers Loan & Trust Co., 154 U. S. 362.

The facts averred in the bill and admitted by the demurrer show conclusively that the plaintiff is not guilty of laches.

*Charles A. O'Brien,* City Solicitor, and *B. J. Jarrett,* with them *Harry Diamond,* for appellees.—The plaintiff's bill does not show sufficient grounds for the intervention of a court of equity: Silkman v. Board of Water Commissioners, 152 N. Y. 327; Provident Institution for Savings v. Mayor of Jersey City, 113 U. S. 506; Jolly v. Monaca Boro., 216 Pa. 345.

Plaintiff had an adequate remedy at law for the matters complained of in the bill: Kershaw v. Philadelphia Water Department, 15 W. N. C. 415.

The bill shows on its face that the plaintiff has been guilty of laches in asserting the rights now claimed: Hilliard v. Allegheny, etc., Wood Carving Co., 173 Pa.

1; Acetylene L., H. & P. Co. v. Smith, 10 Pa. Superior
Ct. 61; Hinnershitz v. United Traction Co., 199 Pa. 3;
Youse v. McCarthy, 51 Pa. Superior Ct. 306; Condron
v. P. R. R. Co., 233 Pa. 197.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5,
1920:

To facilitate a ready understanding of, and future
reference to, this opinion, we have divided it into seven
parts, as follows: (I) Statement of the case. (II)
Consideration of the Public Service Company Law.
(III) Act of June 15, 1915, P. L. 976, in regard to
taxes and water rents in cities of second class. (IV)
Equity jurisdiction, including discussion of general prin-
ciples governing municipal utility rates and inadequacy
of remedies at law; also estoppel by use. (V) Laches.
(VI) Statement concerning authorities cited. (VII)
Final order.

I.

The bill complains that the City of Pittsburgh made
the Barnes Laundry Company install a water meter, and
arbitrarily fixed unreasonable, discriminatory, rates
per thousand gallons for water consumed by it, threat-
ening to compel payment at law—also to cut off the sup-
ply—if such "illegal" charges were not promptly met.
The laundry company prays the municipality be re-
strained from enforcing several uncollected assessments,
and that alleged excessive rates theretofore paid by com-
plainant corporation be ascertained and refunded to it.
The city, and two of its officials, included as defendants,
demurred; the bill was dismissed and plaintiff appealed.

The case presents several important points, one being
the question of jurisdiction of the Public Service Com-
mission; for, of course, if that body has the right to de-
termine the reasonableness of water rates fixed by mu-
nicipalities, the court below lacked power to give relief
in the present proceeding.

## II.

The Act of July 26, 1913, P. L. 1374, is entitled "An act defining public service companies and providing for their regulation by prescribing and defining their duties and liabilities, prescribing, defining and limiting their powers, and regulating their incorporation; and, to a limited extent, regulating municipal corporations engaged or about to engage in the business of public service companies......"

Article I, section 1, states the term "public service company" shall include, inter alia, "water corporations"; the term "corporation" shall include "all bodies corporate," but "shall not include municipal corporations, except as otherwise provided in this act"; the term "municipal corporation" shall include, among others, all "cities"; finally, no property owned by a municipality at the date when the act became effective "shall be subject to the commission or to any of the terms of this act, except as elsewhere provided herein." While it is plain, to this point, the act cannot be construed to comprehend a municipality operating a water plant, yet the question arises whether or not it is "otherwise provided" therein, and, if so, to what extent?

Article II, section 1, paragraph (i), page 1380, states municipal corporations must adopt and use, in conducting their business, such methods as shall be prescribed by the Public Service Commission, "with respect to accounts, records, and memoranda relating to the rendering or furnishing by them to the public of any service of the kind or character rendered or furnished by public service companies, and to the making of reports in relation thereto." Article III, section 3, paragraph (d), page 1388, provides that only upon approval of the commission "shall it be lawful......for any municipal corporation to acquire, construct, or begin to operate, any plant, equipment or other facilities for the rendering or furnishing to the public of any service of the kind or char-

acter already being rendered or furnished by any public service company within the municipality"; but a municipal corporation may continue the operation of its plant or extend the same to any territory which "is not then being supplied by a public service company render‹ ing or furnishing service of a like kind," and any municipality which, at the time the act becomes effective, has "in process of construction any such plant," may proceed with, complete and begin operation thereof "without the aforesaid approval of the commission." In connection with these last mentioned provisions, see article V, section 18, page 1415, which declares the approval of the commission shall be given only when it finds and determines that the granting thereof is "necessary or proper for the service, accommodation, convenience or safety of the public." Article III, section 11, page 1395, provides that "no contract or agreement between any public service company and any municipal corporation shall be valid unless approved by the commission"; and article V, section 15, page 1413, that, "where any municipal corporation is engaged in rendering or furnishing to the public any service of the kind or character rendered or furnished by public service companies," the commission, "with respect to such service," shall not only have power to dictate "a system of accounts, ......, prescribe the accounts in which particular outlays and receipts shall be entered, charged or credited,......and require that no expenditures shall be charged to any operating account that should properly be charged to the capital account, or vice versa," but "shall at all times have access to all accounts" kept by such corporation, and "shall also have power to require the making and filing with it" of all reports, etc., when deemed necessary. Article VI, section 6, page 1422, deals with the subject of complaints to the commission, by municipalities and others.

We have called attention to every provision of the act which relates to or, in any material aspect, mentions municipalities. The review thus made forces the con-

clusion that such corporations are neither within the term "public service companies," as used in the statute, nor are they embraced in its rate-making provisions; further, that they are not subject at all to the jurisdiction of the Public Service Commission beyond the "limited extent" provided in the parts of the act above quoted, as we shall proceed to show.

In the first place, since the title to the legislation in question not only indicates the statute is intended to regulate public service companies in a most comprehensive way, but also contains explicit notice that it controls municipal corporations, engaged or about to engage in the business of such companies, merely "to a limited extent," a construction that, for purposes beyond those expressed in the act, classes municipal corporations as public service companies, or which treats them in any general sense as falling within that designation, would have the effect of so broadening the statute as to make its title actually misleading; and this predicament, ordinarily being sufficient in itself to nullify legislation, must be avoided, unless the interpretation that brings it about is inevitable, which is not so here. We make the last assertion because, while the statute declares the phrase "public service company" comprehends "water corporations," it also, in effect, stipulates the latter term shall "not include municipal corporations" or their regulation, even when rendering the same kind of service as the former class of companies, except as otherwise (to the limited extent) provided in the act. There being several provisions in the act governing municipalities, which state the exact jurisdiction of the commission in those particular instances, but nothing whatever concerning its power to regulate the rates and charges of such (municipal) corporations (keeping in mind the rule that bodies like our Public Service Commission are purely creatures of statute, having the powers there named and no others, which prescribed powers are not to be extended by implication

"beyond what may be necessary for their just and reasonable execution": The People v. Willcox, 200 N. Y. 423, 431; State ex rel. v. Pub. Service Com'rs, 270 Mo. 429, 443; KEPHART, J., in Lycoming, etc., Co. v. Pub. Serv. Com'rs, 67 Pa. Superior Ct. 608, 611; Cincinnati v. Pub. U. Com., 96 Ohio 270, 274), it cannot, by any proper rule of construction, be held that the present legislation controls municipal corporations beyond the limited extent therein expressly provided; and, as before noted, this does not explicitly include a right to regulate their public service rates, nor, when the act is studied and understood as a whole, can such power be properly implied.

Wherever municipal corporations are referred to in the parts of the act to which we have called attention, it will be noticed that, in each instance, the provision in question covers some concrete object to be accomplished with reference to such corporations, within the limited extent the statute is intended to apply to them. No express provision appears either for the supervision or control of municipal rate-making. The parts which deal with municipal corporations contain no reference to either rate-making or regulations, while those having to do with the latter subject omit all mention of municipalities; and neither the provisions we have noted nor those to which we have found no occasion to refer justify the implication that the legislature intended the rate supervisory or regulative features of the statute to govern municipal corporations.

In short, there is not enough in all the provisions of the act to permit a construction which would confer upon the Public Service Commission the right to regulate the service rates charged by a municipal water plant; on the other hand, there is much to be found therein which strongly evidences an intention that the statute shall not, in any such extended sense, apply to municipal corporations. For instance, all the numerous provisions as to supervisory control of the commission

over the issue of bonds and other securities by those constructing or maintaining public service plants, are inappropriate to municipalities engaged in such work, and it is inconceivable there was legislative purpose that they should apply thereto; yet if we, on general principles, construe such corporations to be, for purposes of the act, on a par with public service companies these provisions would apply in the same degree as those granting to the commission supervisory power over rates. In other words, if we go on the theory of evident intendment, there is just as much warrant for holding the one set of provisions applicable to municipal corporations as the other. Many additional instances of a like character might be noted, such as the provisions requiring the consent of the commission for either the chartering, or change in franchise, of a corporation controlled by the act; those subjecting the officers of corporations exercising public service rights to criminal charges of misdemeanor for the violations of the statute, etc., etc., all of which are inappropriate to municipalities.

That the legislature did not, under any circumstances, intend municipal corporations to fall within the term "public service companies," in a general sense, is evident; for if such term were intended to comprehend municipalities, most of the special provisions relating to that class of corporations would be entirely unnecessary,—particularly is this so as to the keeping of accounts, making reports, etc., which all public service companies are obliged to do under the general provisions of the statute. The act probably intended such accounts to be kept and reports to be made by municipal corporations, in order that the commission might have the benefit of the information which they contain, in regulating public service companies operating in the same neighborhood or under approximately like conditions, and in passing on future municipal applications of a character over which, by the express terms of the statute, that

body is given jurisdiction. Furthermore, when the act is read as a whole, it is plain that its provisions, requiring municipalities to obtain consent of the commission before purchasing, entering upon the construction of, or extending public service plants, were intended probably for the purpose of protecting public service companies which operate in territories sought to be accommodated by municipalities, and thus to prevent municipal plants being used to the injury of private ones previously established, whenever the latter are ample for the accommodation of the public.

In reaching the conclusion that the legislature did not intend to subject municipal corporations, rendering the same character of service as public service companies, to like regulation with the latter, we have not overlooked our own authorities which hold that, when a city undertakes to supply water, it acts "not by virtue of any right of sovereignty, but exercises merely the functions of a private corporation," and must be so considered (see Com. v. Casey, 231 Pa. 170, 178, and authorities there mentioned, together with cases holding a like principle, from this and other jurisdictions, cited by appellant); but those cases have naught to do with the construction of the present act of assembly, and are not controlling here.

The legislature, by the law we are now construing, in effect divides corporations doing public service (according to the industrial sense in which that term is used in the act) into two kinds, namely, (1) corporations other than municipal, and (2) municipal corporations; this they had the right to do in order to accomplish the purposes of the act—no matter how much, under other and different circumstances, our law makers might be prevented from compassing such a classification. When rendering the same character of service as public service companies, municipalities for many purposes must be considered and treated like private corporations (as shown by the Pennsylvania cases before cited);

but, for purposes of supervision over their internal management (which the present act repeatedly treats as necessarily involved in the control of rates), it can readily be seen they may justifiably be put on a different basis from ordinary public service companies; for, though engaged in rendering the same kind of service as the latter, and entitled to derive therefrom a just gain (Jolly v. Monaca Boro., 216 Pa. 345, 348-9; Wagner v. City of Rock Island, 146 Ill. 139, 154; Farnham on Waters and Water Rights, sec. 162, page 855), municipalities are supposed to act primarily for the public good—not to earn dividends; moreover, they are financed along quite different lines from other corporations, and managed by popularly elected officers, who, as just said, are presumed to act for the public weal, and, when they fail to do so, may be turned out by their constituents at stated intervals. These considerations, with others which may readily be called to mind, account for and justify the omission of municipal corporations from the general application of our Public Service Company Act.

Albeit for most purposes the law will not tolerate a differentiation of corporations engaged in the same general character of service, yet, since the validity of legislative classification depends upon the existence—keeping in view the end to be accomplished—of real distinctions between the objects dealt with, when we consider the points already mentioned, always remembering the present act is avowedly one to "regulate" public service companies and, only "to a limited extent," municipal corporations, the classification under attack (notice of which is given in the title of the act, supra) cannot be held to lack substantial or reasonable support; we are therefore without warrant to set it aside. The last statement is important because appellant, while admitting the probability that the legislature did not intend to regulate municipal rate-making, contends nevertheless that the classification in question offends our constitu-

tional inhibition against special legislation and, since the act contains a provision to the effect that if any particular part shall be declared unconstitutional such decision shall not affect other parts thereof, it further contends we should read the law as though the alleged unconstitutional parts—working the division of corporations into different classes—were not contained therein, thus placing municipal corporations rendering the same kind of service as public service companies in a general class with the latter, and, by this method of construction, or elimination, subjecting the former to all the terms of the act. This view was taken by the Supreme Court of Illinois in the Springfield Gas & Electric Co. v. The City of Springfield, vol. 15, No. 8, Rate Research, page 1; but, in our opinion, for the reasons hereinbefore stated, the legislative classification objected to being permissible, the Illinois decision is not a proper guide to follow.

Our conclusion, that the "limited" application of the Public Service Company Act, referred to in its title, does not comprehend the right of the commission, thereby created, to regulate water rates charged by defendant municipality, necessitates consideration of other and quite different jurisdictional questions; which we shall now discuss.

### III.

The Act of June 15, 1915, P. L. 976, amending certain other acts, which govern the "levy, collection and disbursement of taxes and water rents" in cities of the second class, declares, by section 3, p. 978, that "the city shall have power to prescribe by ordinance......the terms and conditions on which water will be supplied on a metered service" and authorizes the assessment of "water rents, or rates, for the water consumed, at the rates fixed from time to time by ordinance." By section 5, page 981, city councils are empowered to create a board of water assessors, in the number and manner therein

set forth; and it is provided that councils shall "annually levy and fix a schedule of water rents, or rates, ......at which water will be furnished by meter, and the conditions upon which the same shall be furnished, and shall have the right to require the use of meters, upon such terms and conditions as may be prescribed by ordinance, either in specified classes of users, or in certain sections of the city, or generally throughout the city, and said board shall have the power and authority of assessing the water rents, or rates, in accordance therewith." This fifth section also gives the board power to grant exonerations "upon such terms as may be prescribed by councils," and it further provides that any person, feeling aggrieved by an assessment, can, on or before the first day of February in each year, "appeal to the full board of water assessors, sitting as a board of revision, and demand a reassessment." On such appeal, the board is granted power to examine witnesses, and "any owner who is dissatisfied with the final decision" can within thirty days, appeal therefrom to the court of common pleas, which tribunal "shall proceed at its earliest convenience to hear said appeal and to make such order and decree touching the matter complained of as may seem just and equitable." An appeal is given from the common pleas to the Supreme or Superior Court, and it is declared that "no appeals taken from such assessment shall prevent the collection of the water rents, or rates, complained of, but in case the same shall be reduced, then the excess or overpayment shall be returned to the person who shall have paid the same."

In 1915 and prior thereto water rents in the City of Pittsburgh were charged at a "flat" rate; but thereafter, pursuant to a general ordinance upon the subject, enacted in 1914, they were assessed against plaintiff and others on a "meter" basis.

Plaintiff's bill complains of the charges against it for 1916, 1917 and part of 1918, this suit having been com-

menced in June of the last named year. The assessments in question were made in accordance with ordinances passed in the several years mentioned, designating meter rates for "laundries" and other industrial and domestic users of water throughout the City of Pittsburgh. These ordinances authorize the board to make exonerations only in cases where properties have become vacant or when fixtures are removed and the use of water discontinued, which provisions have no reference to the facts in the present case.

The Act of 1915 stipulates that appeals to the "full board of water assessors sitting as a board of revision" are to be made "on or before the first day of February in each year"; and, as we understand the situation, under the law meters are read quarterly beginning with April. April being subsequent to February, this arrangement would appear to render the statutory appeal thus provided for nugatory, so far as the present appellant and other users of water-meters are concerned. We need not, and do not, decide that point, however, for the sole right which the act gives on such an appeal to persons "aggrieved by any assessment" is to "demand a reassessment," and, since the board have only "the power and authority of assessing" in accordance with the "schedule of water rates" prescribed by council, the former could do no more, on revision, than correct its own administrative errors,—of law, in interpreting, or of fact, in carrying out, its chart of powers; it, like other administrative officers (Chelten Trust Co. v. Blankenburg, 241 Pa. 394, 397), being bound by all relevant city ordinances until they are either abrogated by council or duly set aside by the courts. In other words, the board of water assessors, even on appeal, would have no authority to inquire into the reasonableness or justice of either the rate or classification ordained by council; and the alleged unreasonableness and discriminatory character of these are the real grounds of complaint in this case.

Although the courts are given jurisdiction on appeal to make "such order and decree touching the matter complained of as may seem just and equitable" (Act 1915, supra), this warrant of authority is necessarily limited to a revision of those matters which may be legally "complained of" to the full board of water assessors, i. e., errors in assessments which that body has power to redress, by reduction or otherwise. We conclude the Act of 1915 does not afford a remedy at law to the present plaintiff.

The matters determined thus far bring us to the question of equity jurisdiction; for alleged lack of which, among other stated reasons, the court below dismissed plaintiff's bill.

## IV.

The Act of June 16, 1836, P. L. 1835-6, 785, 790, section 13, provides that the several courts of common pleas shall have chancery powers to prevent or restrain "the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals." This broad grant of equity jurisdiction is sufficient to cover cases like the one now before us, where plaintiff complains that defendant city has unlawfully arrogated to itself the right to make and enforce unreasonable and discriminatory water rates to the prejudice of the former.

While, necessarily, a wide range of discretion is allowed municipal authorities in fixing public service rates (Rieker v. Lancaster City, 7 Pa. Superior Ct. 149, 156, paragraph 2, 157, part of last paragraph; Cook County v. Chicago, 103 Ill. 646, 650; Preston v. Board of Water Com'rs, 117 Mich. 589, 598), and classification of users is permitted (Act of 1915, supra; Rieker v. Lancaster, supra, 156; Fretz v. Edmund City, 168 Pac. 800, 802; Preston v. Water Com'rs, supra), yet a city operating a legalized monopoly, in the nature of a water plant, cannot give undue or unreasonable preference or ad-

vantage to, or make unfair discrimination among, customers, any more than a private corporation similarly situated (3 Dillon on Municipal Corporations—5th ed. —sec. 1317, page 2204; Chicago v. N. W. M. L. Ins. Co., 218 Ill. 40, 43; Red Star S. S. Co. v. Jersey City, 45 N. J. L. 246, 250; Wagner v. City of Rock Island, 146 Ill. 139; Fretz v. Edmond City, supra; as to reasonableness of rates, see also Jolly v. Monaca Boro., 216 Pa. 345, 350), nor is it to be assumed that an act of assembly intends indirectly to confer such legally discountenanced power; yet, this, in effect, is what defendant municipality claims for the Act of 1915, supra.

"It is not competent for the State to enact that the rates [for public utilities], fixed either by the legislature or by a commission or municipality,......are conclusive......; for such an act would be unconstitutional, because it denies to the party affected due process of law, and, by depriving it of the lawful use of its property, it in substance and effect deprives it of the property itself, and of the equal protection of the laws, contrary to the express provisions of the XIVth Amendment [to the Federal Constitution] and the fundamental principles of American liberty": see 3 Dillon on Municipal Corporations (5th ed.), sec. 1324, page 2228, and authorities there cited from the United States Supreme Court.

The Act of 1915 deals with both taxes and water rates, as sources of revenue, but the two are therein kept separate and distinct; as, indeed, so far as the right of the courts to review their assessment is concerned, they must be; for, technically, a water rent is not a tax, it is a charge for industrial service (Jolly v. Monaca Boro., 216 Pa. 345, 348-9, 350; Rieker v. Lancaster, supra, 156; Wagner v. City of Rock Island, supra; Preston v. Water Com'rs, supra, 598; Silkman v. Board of Water Com'rs, 152 N. Y. 327), and, therefore, may be judicially inquired into: see cases cited; also 40 Cyc. 801.

The question as to just what elements the courts will or must consider, in deciding as to the reasonableness

of municipal water assessments, is not here for decision at the present time; that can be determined when it properly arises. All we now decide is equity has jurisdiction to entertain plaintiff's complaint that, threatening to shut off its supply unless it pay alleged "excessive, unreasonable and discriminatory" charges for the years in question, the defendant municipality arbitrarily and unreasonably selected the Barnes Laundry Company, compelling it to use meters at an unreasonable and discriminatory rate, or charge, while many others in the same industrial situation, using water under substantially similar circumstances and conditions, were, for the same periods of time, supplied on a flat rate basis, which was much less than the rate here sought to be attacked.

The suggestion that plaintiff has a remedy at law, by waiting until the city files a lien for its water rents and then defending upon sci. fa. does not appeal to us; such a course would be inadequate for many reasons. In the first place, meter rates being billed every three months and the act providing they shall become delinquent if not paid at the end of each quarter, plaintiff might be obliged to defend four different suits in any one year; next, if it did not pay the bill at the end of the initial period, the water could be shut off. Although equity ordinarily will not entertain a suit where redress may be had at law, yet equitable jurisdiction does not depend entirely upon the want of a common law remedy, but may be sustained on the ground that, under given circumstances, it is the most convenient and efficient road to adequate relief; which principle applies to the present case.

Before concluding this branch of our consideration, we may say that neither by ordering nor using a necessity like water, from a plant which enjoys a monopoly of supply, can one be held estopped—on the theory of implied contract or otherwise (4 McQuillan on Municipal Corporations, sec. 1725, page 3690; Id. page 3729, n. 8)—from the right, in a due and proper proceeding, to

question either the reasonableness of the ordained rate or the justness of its application, for rates unlawfully exacted are treated in law as though assented to under duress: Chicago v. N. W. M. L. Ins. Co., 218 Ill. 40, 44. The city's contention to the contrary cannot be sustained: see Turtle Creek Boro. v. Pa. Water Co., 243 Pa. 401; Mechanicsburg Boro. v. Mechanicsburg G. & Water Co., 246 Pa. 232; Leechburg Boro. v. Leechburg Water Works Co., 219 Pa. 263, 267, and other cases cited in this opinion, where users of water were permitted to question rates charged therefor. Here, so far as plaintiff is entitled to be heard, it properly asked relief in equity; but, among other grounds for denying a hearing, the chancellor held the complainant guilty of laches; we shall now consider that reason for dismissing the bill.

## V.

The opinion of the court below states: "In view of plaintiff's knowledge of the facts and its failure to institute proceedings for relief until the city for three successive years had assessed and in part collected the water rents on the basis fixed by the ordinance, we think complainant guilty of such laches as defeats this action, even if the bill were otherwise sustainable."

Owing to the manner in which, under the law (Act of 1915, supra), defendant municipality must be financed and its taxes and water rates arrived at, it is highly important that its officials should know, each year, the probable revenues they can depend upon; and this is largely figured on the basis of the prior twelve months. Hence, water users who, like the present plaintiff, desire to attack the reasonableness of rates charged in any particular year, must proceed without undue delay; otherwise it is plain the city will be seriously inconvenienced. Plaintiff is chargeable with knowledge that the fixing of the water rates of which it complains necessarily affected thousands of others in addition to itself; therefore, if it considered such rates unreasonable and

desired to question them in equity, it was its duty, in each instance, to proceed within the current year. We find nothing in plaintiff's averments sufficient to relieve it from the charge of laches so far as the time prior to 1918 is concerned, and, as to those years, the court below did not err in dismissing the bill, but plaintiff was entitled to, and should have been granted, a hearing on its complaints relating to 1918; the denial of this was error.

### VI.

The authorities cited in this opinion are relied upon, in each instance, only for the particular point mentioned, and we are not to be considered as further adopting the views expressed therein; particularly is this so in regard to the cases from foreign jurisdictions.

### VII.

The decree is affirmed, except so far as it relates to the year 1918, to that extent it is reversed and the bill reinstated with a procedendo; defendant municipality to pay the costs.

Mr. Justice FRAZER dissents.