## Municipally Owned Utilities on State Property

Department of Justice. Opinion to Hon. Warren Van Dyke, Secretary of Highways.

MARGIOTTI, Attorney General, September 18, 1935.— You have asked to be advised whether you may place municipalities in a separate classification and exempt them from the payment of fees for the occupancy of State bridges by municipally owned storm or sanitary sewers, fire alarm signal systems, bridge lighting facilities, light and power lines, and other public utilities.

There are three acts regulating the occupancy of State highways and bridges.

Section 17 of the Sproul Act of May 31, 1911, P. L. 468, as amended by the Act of June 26, 1931, P. L. 1388, reads in part as follows:

"No . . . gas pipe, water pipe, electric conduits, . . . electric light or power poles, . . . or any other obstruction, [shall] be erected upon or in any portion of a State highway . . . , except under such conditions, restrictions, and regulations, and subject to the payment of such fees for permits, as may be prescribed and required by the Department of Highways, . . . . *The Secretary of Highways shall also have authority to issue permits to any public utility company for the occupancy, by the facilities of such company, of any bridge under the control or jurisdiction of the Department of Highways.*"

That part of the above act which we have italicized was added by the amendment of 1931.

The County Bridge Act of May 21, 1931, P. L. 147, as amended by the Act of July 15, 1935, P. L. 1035, provided for the taking over of county or township bridges on State highways as State bridges. Section 4 of that act provided as follows:

"The department shall also have authority to issue li-

censes for such length of time and for such fee, for the occupancy of any bridge by the facilities of any public service company, as may be determined by the Secretary of Highways, with the approval of the Governor, under the provisions of existing laws."

Section 514 of The Administrative Code of April 9, 1929, P. L. 177, as last amended by the Act of July 12, 1935, P. L. 791, provides, in part, as follows:

"(a) . . . a department . . . may, with the approval of the Governor, grant a license to any public service corporation to place upon, in, or over, any . . . bridge of or maintained by the Commonwealth, any public service line . . . . Every such license shall be revocable upon six months' written notice by the Commonwealth, and upon such other proper terms and conditions as the department, . . . with the approval of the Governor, shall prescribe, and unless any such line is primarily for the benefit of a State building or State institution, the license shall provide for the payment to the Commonwealth of compensation for the use of its property in such amount as the department . . . granting it shall, with the approval of the Governor, prescribe.

"*But nothing herein contained shall authorize the Commonwealth to impose and collect from any municipality or township any compensation for a license granted to such municipality or township for the running of a public service line over any such bridge.*"

The italicized portion was added by the amendment of 1935. Since this amendment does not contain an effective date, it did not become effective until September 1, 1935, under the provisions of the Act of May 17, 1929, P. L. 1808, as amended by the Act of June 10, 1935, P. L. 293.

Your inquiry concerns the occupancy of State bridges by municipally owned storm or sanitary sewers, fire alarm signal systems, bridge lighting facilities, light and power facilities and gas and water lines. These facilities fall into two general classes. The first class includes those

which are installed by the municipality for the protection of the health and safety of its inhabitants, and which are paid for out of the general funds of the municipality obtained from local taxes. For the purpose of this opinion, we shall label these "governmental facilities", which include storm or sanitary sewers, fire alarm signal systems and bridge lighting facilities. The other class consists of those projects which furnish service to the residents of the borough of the same kind and nature as that furnished by public utility companies, and which service the individual residents pay for in proportion to the amount or quantity used. We shall refer to these as "public service facilities", which would include lines for the furnishing of light and power and gas and water.

We shall consider separately the effect of the three statutes above quoted upon the occupancy of State bridges by each class of facilities.

### (a) Public Service Facilities

The amendment to section 514 of The Administrative Code of April 9, 1929, P. L. 177, contained in the Act of July 12, 1935, P. L. 791, clearly eliminates the necessity of imposing and collecting license fees upon a municipality for the running of its public service lines over any State bridge. However, this amendment is in the form of a statutory condition, and must be construed strictly. Clearly, the legislature did not intend to remove the duty and authority of the Department of Highways to issue licenses for the occupancy of State bridges by municipalities or townships, but merely removed the authority to collect license fees. As a result, the Department of Highways continues to have the complete power to regulate the occupancy of those bridges under its jurisdiction by municipally owned public service lines.

Since the 1935 amendment of The Administrative Code does not become effective until September 1, 1935, it becomes necessary to decide whether municipalities may be charged for public service licenses in those cases pending.

Under existing law, a municipality, seeking to occupy a State bridge with its public service facilities, must secure the permission of the Department of Highways before it can occupy the structure. The Sproul Highway Act of 1911 places the State highways, including State bridges thereon, under the exclusive jurisdiction and control of the department. Under section 17 of that act, quoted above, prior to the 1931 amendment relating specifically to public service companies, no obstruction or occupancy of the highways was permitted, except under such conditions and on the payment of such fees as were prescribed by the department with the approval of the Governor. The legislature by the 1931 amendment clearly did not intend to take away from the department the power which it formerly had to regulate the occupancy of all State bridges by all persons and corporations, including municipalities.

Similarly, under the County Bridge Act, as amended, all county and township bridges are maintained by the department under the provisions of existing laws, which includes the power of the department to regulate the occupancy by public service facilities or lines of any other description.

From the foregoing, it is clear that a municipality must secure the permission of the department before occupying a bridge under its jurisdiction by facilities owned by the municipality. Whether the department has the power to make a separate classification for the public service facilities of municipalities, in order to exempt them from the payment of license fees, depends upon the provisions of section 514 of The Administrative Code prior to the 1935 amendment. Although under section 514 the amount of the license fees is within the discretion of the department, reasonably exercised, subject to the approval of the Governor, nevertheless that section requires the department to charge fees for the occupancy of State bridges, unless the line is primarily for the benefit of State buildings or institutions. If the legislature

had not placed this limitation in section 514, the department would undoubtedly have the power to relieve municipalities of the payment of such fees with the approval of the Governor. However, since the legislature has specifically provided for one exception to the requirement of the payment of fees, it impliedly excluded any further exemption from those fees. Furthermore, such exemption would be undesirable because it would unjustly discriminate between competing classes of public service lines.

Section 514 of The Administrative Code, quoted above, regulating the occupancy of State bridges, refers to the issuing of licenses for "any public service line" of the licensee "public service corporation". Similarly, the County Bridge Act provides for the issuing of licenses for the occupancy by "the facilities of any public service company", and section 17 of the Sproul Act authorizes the issuing of permits to "any public utility company" for the occupancy of a bridge by its facilities.

It, therefore, becomes necessary to determine whether public service lines owned by municipal corporations are included in the language of these acts.

We are not unmindful of the decision in Barnes Laundry Co. v. Pittsburgh et al., 266 Pa. 24 (1920), where it was decided that municipalities were not included generally in The Public Service Company Law of July 26, 1913, P. L. 1374, because the statute expressly eliminated them and that they could not therefore be brought in by implication as public service companies.

However, it has been held on several occasions by the Supreme Court that, where a municipal corporation engages in an activity of a business nature which is generally engaged in by private corporations, it acts as such corporation and not in its governmental or sovereign capacity. In American Aniline Products, Inc. v. Lock Haven, 288 Pa. 420, 424 (1927), the Supreme Court said:

"When a municipal corporation engages in an activity of a business, rather than one of a governmental nature,

such as the supply of light or water, which is generally engaged in by individuals or private corporations, it acts as such corporation, and not in its sovereign capacity: Western Saving Society v. Phila., 31 Pa. 185. The relation to the public created by its ordinances are, in such cases, not legislative, but contractual."

And in Barnes Laundry Co. v. Pittsburgh et al., supra, the Supreme Court said at page 36:

"In reaching the conclusion that the legislature did not intend to subject municipal corporations, rendering the same character of service as public service companies, to like regulation with the latter, we have not overlooked our own authorities which hold that, when a city undertakes to supply water, it acts 'not by virtue of any right of sovereignty, but exercises merely the functions of a private corporation,' and must be so considered (see Com. v. Casey, 231 Pa. 170, 178, and authorities there mentioned, together with cases holding a like principle, from this and other jurisdiction, cited by appellant)".

A brief reference to the three acts above quoted, regulating the occupancy of State bridges, clearly indicates that the legislature did not intend to make any distinction between the public service activities of private corporations as compared with those of municipal corporations. We are of the opinion that a municipality which supplies gas, electricity or water is not engaging in a governmental function but in a private business, and, therefore, comes within the terms of these acts requiring licenses for public service lines.

### (b) Governmental Facilities

Those provisions of the above-quoted sections of the Sproul Act, the County Bridge Act and The Administrative Code, which refer to the occupancy of bridges by the facilities of public service companies, clearly are inapplicable to the so-called "governmental facilities", such as storm or sanitary sewers, fire alarm signal systems and bridge lighting facilities. As to these facilities, it cannot

be said that the municipality is engaging in an activity of a business nature generally engaged in by private corporations. The purpose of these facilities is the protection of the general health and welfare of the community, which is unquestionably a governmental function. Clearly, the municipality is not acting in the capacity of a private corporation, unless the cost of operating such facilities is paid for by a pro rata assessment against the beneficiaries of the facilities, as is occasionally done in the case of sanitary sewers. However, if the facilities are not paid for out of general funds of the municipality, then we cease to regard them as governmental facilities, but place them, for the purpose of this opinion, in the category of public service facilities.

The provisions of section 17 of the Sproul Act clearly prevent the occupancy of the highways by any sort of lines or obstructions without first obtaining a permit from the Department of Highways. The reasoning heretofore set forth, showing that municipalities may not occupy the highways by their public service facilities without receiving a permit, is equally applicable to governmental facilities.

Therefore, we are of the opinion that the general provisions of section 17 of the Sproul Act require municipalities to obtain permits for the occupancy of State bridges by governmental facilities, and to pay such permit fees as the department may require. Of course, these facilities may be exempted entirely from such permit fees within the discretion of the Secretary of Highways.

To summarize, you are advised as follows:

1. All municipalities (including townships) must obtain a license from the Department of Highways before occupying a State bridge with municipally owned public service facilities, such as light and power lines and gas and water mains. If such occupancy occurs prior to September 1, 1935, the Department of Highways should charge the regular bridge occupancy license fee which is imposed upon privately owned public service corpora-

tions for the same class of occupancy. However, after September 1, 1935, the department is not authorized to collect a license fee from municipalities for the occupancy of State bridges by their public service facilities.

2. Such municipalities may be required by the Department of Highways to obtain a permit for the occupancy of State bridges by their governmental facilities, such as storm or sanitary sewers, fire alarm signal systems and bridge lighting facilities, subject to the payment of such permit fees as may be prescribed by the department.

Fred Frederic Ray, Harrisburg, Pa.