# Consolidated Ice Co., Appellants *v.* Pittsburgh et al.

*Municipalities — Water rates — Discrimination — Discretion — Meter rates—Flat rates—Free water to charities—Cities of second class—Equity—Jurisdiction—Act of June 16, 1836, P. L. 785— Appeal—Findings by court.*

1. Under the Act of June 16, 1836, P. L. 785, a court of equity has jurisdiction to entertain a bill by a citizen who complains that a municipality has unlawfully arrogated to itself the right to make and enforce unreasonable and discriminatory water rates to his prejudice.

2. A city of the second class has the right to require its water customers to take by meter, or part of them by meter and part by flat rate; and this is more especially so during a period of transition.

3. A city will be presumed to have exercised a proper discretion in adjusting its water rates.

4. A city is not required to furnish water to any customer for less than cost.

5. The fact that meter rates are by the gallon much higher than flat rates is no indication that the former are too high and the latter too low.

6. The fact that owing to the natural elevation of certain sections of a city, water cannot be supplied in such city as cheaply as in some other cities, should be considered on the question of rates.

7. The fact that a city supplies itself with free water for fire protection, etc., and also supplies free water to certain public charities, is not an abuse of discretion, and affords its pay customers no just ground for complaint.

8. Where a court of equity finds as a fact on sufficient evidence that a city has established water rates which are fair, just and reasonable and not discriminatory between two different classes of customers, such finding will not be reversed on appeal, in the absence of manifest error.

Argued May 11, 1922.   Appeal, No. 102, Oct. T., 1922, by plaintiff, from decree of C. P. Allegheny Co., April T., 1918, No. 1865, dismissing bill in equity, in case of Consolidated Ice Co. v. City of Pittsburgh, Charles S. Hubbard, Treasurer, John Swan, Jr., Director Depart-

ment of Public Works.   Before MOSCHZISKER, C. J., FRA-
ZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAF-
FER, JJ.   Affirmed.

Bill in equity for an injunction.   Before CARPENTER, J.
The opinion of the Supreme Court states the facts.
Bill dismissed.   Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*J. B. Eichenauer* and *W. W. Stoner,* with them *Gray,
Thompson & Rose* and *Bialas & Ryan,* for appellant.—A
municipality when engaged in supplying water to the
public can charge only a reasonable rate: Barnes Laun-
dry Co. v. Pittsburgh, 266 Pa. 24; Central I. & S. Co. v.
Harrisburg, 271 Pa. 340; Mercur v. Media Electric, etc.,
Co., 19 Pa. Superior Ct. 519; Brymer v. Water Co., 179
Pa. 231; Reagan v. Loan & Trust Co., 154 U. S. 362;
Turtle Creek Borough v. Water Co., 243 Pa. 401.

All consumers who use water under substantially simi-
lar circumstances and conditions are entitled to the same
rate: Roumforth Co. v. Delaney, 230 Pa. 374; Bailey v.
Fuel Co., 193 Pa. 175; Mercur v. Media Elec. Light Co.,
19 Pa. Superior Ct. 519.

The item of fair return is often a difficult matter to
determine and must depend for its solution largely upon
the facts and circumstances of the particular case: Bry-
mer v. Water Co., 179 Pa. 231; Penna. R. R. v. Phila.
Co., 220 Pa. 100; Turtle Creek Boro. v. Water Co., 243
Pa. 401; Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24;
Greensburg v. P. S. C., 73 Pa. Superior Ct. 75, 80, af-
firmed 268 Pa. 177; Central I. & S. Co. v. Harrisburg,
271 Pa. 340.

The duty of the City of Pittsburgh under its charter,
when it engages in operating a waterworks, is to supply
water to all its inhabitants for all purposes, and it can
make no distinction between domestic users and in-

dustrial users: White v. Meadville, 177 Pa. 643; Central I. & S. Co. v. Harrisburg, 271 Pa. 340.

*Charles K. Robinson,* Special Assistant City Solicitor, with him *Richard W. Martin,* City Solicitor, and *S. M. Soffel,* Assistant City Solicitor, for appellees.—Questions involved in this case are primarily ones of good judgment and courts will not disturb judgment of corporate authorities except for clear abuse of discretion: Lehigh Water Co.'s App., 102 Pa. 515; Pittsburgh v. Gas Co., 34 Pa. Superior Ct. 374.

OPINION BY MR. JUSTICE WALLING, June 24, 1922:

This suit in equity is for relief from alleged unjust and discriminatory water rates, and is a companion case to Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, where the facts and controlling legal principle will be found exhaustively stated in the opinion by the present Chief Justice. We may, however, properly recount that Pittsburgh is a city of the second class duly authorized by statute to supply its inhabitants with water. Pursuant to which it has established at an expense of thirty-two million dollars, and operates, a large and efficient plant, which furnishes, and has a monopoly in furnishing, water to nearly the entire city. At first it supplied all classes of customers at flat rates, but years ago, in the interest of conservation, a gradual change to a meter system was inaugurated and has been carried forward until in 1920, of the ninety-three thousand connections, thirty-five thousand were by meters. The city's policy has been to first place its larger customers upon meters so that now all industrial users of city water take by that method, as do many thousands of domestic users. The plaintiff corporation is extensively engaged in the manufacture of ice and has five plants located in the city, all dependent upon the latter for water, of which a very large quantity is necessary. In 1915 the city placed and has since continued these plants upon meters. The city annually fixes

the price of water furnished by meters on a graduated
scale, which for the years here in question was eighteen
cents a thousand for the first two hundred and fifty thou-
sand gallons, sixteen cents a thousand for the second two
hundred and fifty thousand gallons, fourteen cents a
thousand for the third two hundred and fifty thousand
gallons and twelve cents a thousand for all additional
amounts taken during the year; the price was the same
to all metered customers regardless of what use was
made of the water.

The city pumps about thirty billion gallons of water
annually that reaches consumers; of this, about one bil-
lion gallons is free water, being for fire protection, street
cleaning, etc., twelve billion gallons go to the metered
users and the remaining seventeen billion gallons to the
flat-rate users.   Of the latter, four billion gallons is
properly used and the balance (thirteen billion gallons)
is wasted.   The waste results from careless users, de-
fective fixtures, all night sprinkling, keeping the water
running to prevent freezing, etc.   So, while the city de-
rives a revenue of only six cents a thousand gallons on
the average from its flat-rate customers, when they
change to meters, and are prompted by self interest to
use care, they save fifty-five per cent from their former
flat-rate bills.   The average amount received by the city
from the meter customers is fourteen and one-half cents
per thousand gallons.

In 1918, plaintiff filed this bill praying that the meter
rates be decreed excessive and, as against the flat rates,
discriminatory, and that the city be ordered to refund
the excess amount plaintiff had been compelled to pay
thereunder during the years 1916, 1917 and 1918.   On
demurrer the court below dismissed the bill, but its
action therein was reversed by this court (see Barnes
Laundry Case, supra) and the record remitted for a
hearing upon the merits as to the year 1918, the com-
plaint as to the earlier years being held barred by laches.
Thereafter, the bill was amended so as to embrace the

years 1918, 1919, 1920, and the case was heard upon bill, answer, replication and testimony, upon which findings were made both as to facts and legal conclusions; this appeal by plaintiff is from a final decree dismissing the bill.

In our opinion the decree is right. In the Barnes Laundry Case, supra, we held that, "Under the Act of June 16, 1836, P. L. 785, a court of equity has jurisdiction to entertain a bill by a citizen who complains that a municipality has unlawfully arrogated to itself the right to make and enforce unreasonable and discriminatory water rates to his prejudice," and also (omitting the citations) that, "While, necessarily, a wide range of discretion is allowed municipal authorities in fixing public service rates, and classifications of users is permitted, yet a city operating a legalized monopoly, in the nature of a water plant, cannot give undue or unreasonable preference or advantage to, or make unfair discrimination among, customers, any more than a private corporation similarly situated." The right of a second-class city to require its water customers to take by meter is undoubted (see section 5, Act of June 15, 1915, P. L. 976, 981; Barnes Laundry Case, supra; Wagner v. City of Rock Island, 146 Ill. 139; Ladd v. Boston, 170 Mass. 332; 40 Cyc. 802) or part of them by meter and part by flat rate (Central I. & S. Co. v. Harrisburg, 271 Pa. 340), and that is more especially so during a period of transition. The city is presumed to have exercised a proper discretion in adjusting its water rates (Duquesne Light Co. et al. v. Public Service Commission et al., 273 Pa. 287) and the trial court finds the contrary is not established by the evidence.

The annual rates were fixed at the beginning of each year as nearly as practicable so as to supply water at actual cost, that being the policy of the city, and, as adjusted for the years in question, created only a reasonable surplus; hence, there is no ground for contention that the water rates, as a whole, produced too much revenue. The real gravamen of plaintiff's complaint is

that the rates as fixed unfairly discriminated in favor of the flat-rate users; if so, relief should be granted; but this contention overlooks the practical operation of the two systems. The meter customers pay by the gallon for the water actually used and, of course, conserve it, while the flat-rate customers in effect pay for a water privilege, limited only by the capacity of the fixtures, regardless of the amount used, and the habitual carelessness of many accounts for the enormous waste. But to compel them to pay at fixed rates for all the water, both used and wasted would at once abolish the flat-rate system, as they all would then be, in effect, taking through a common meter where the careful user must pay for the waste of the careless, which would be entirely impracticable and unjust. It therefore does not follow that meter rates are too high, or flat rates too low, because the former is by the gallon much higher than the latter; and the fact that by the installation of a meter the domestic consumer saves a large percentage on his water bill tends to prove the contrary, and there is no finding, nor does the evidence taken as a whole call for any, that the flat rates are actually relatively too low. It is found that like water (all city water being filtered) is furnished under like circumstances to both classes, and that is true, except as to the cost of installing, inspecting and reading the meters and some additional expenses of billing and collecting under that system, which, aside from the question of waste, calls for a higher rate. As such waste water comes from the city's supply it costs less than it otherwise would. Moreover, were meters at' once installed for all the flat-rate users, it would be of no advantage to plaintiff, or to others similarly situated, for the saving in pumpage and equipment would be offset by the loss in revenue.

Plaintiff further contends that water can and should be furnished to the very large users, like itself, at less than the minimum rate of twelve cents per thousand gallons, and supports this contention by expert evidence;

but this is contradicted by equally strong expert evidence for the defense, and the trial court found in accordance with the latter. A city is not required to furnish water to any customer for less than cost. There are large manufacturing plants in Pittsburgh using vast quantities of raw water which they pump from the near-by rivers; in fact, there is one such plant that uses as much water as is supplied by the city's entire water works; so, should the city supply water at a minimum rate less than cost, it might have the disastrous effect of inducing those plants to call upon the city for water in quantities entirely beyond its capacity. Owing to the natural elevation of certain sections of Pittsburgh, water cannot be supplied there as cheaply as in some other cities, which should be considered on the question of rates (Mercur v. Electric Light, etc., 19 Pa. Superior Ct. 519; Souther v. Gloucester, 187 Mass. 552) and its water system being in a transition state from flat rate to meters, may cause slight temporary inequalities; but we are satisfied, from an examination of the entire record, that the city is solving its water problem intelligently and in a spirit of fairness. A city is entitled to a reasonable discretion on the question of water rates (Central I. & S. Co. v. Harrisburg, supra; Reiker v. Lancaster City, 7 Pa. Superior Ct. 149) and the evidence supports the controlling finding of the trial court that, so far as affects this suit and the other suits (fourteen in number) tried with it, "Under all the circumstances, the schedules for metered rates of the City of Pittsburgh in the years 1918, 1919 and 1920 are not unreasonable or excessive; and there has been no abuse of the discretionary power of council in the fixing of the said rates. The present bills of the City of Pittsburgh with respect to flat rates and metered rates are not discriminatory and are fair, just and reasonable schedules."

There was no discrimination here between industrial and domestic users, as the meter rates were the same to both, so the trial judge's suggestion of the right to make

such discrimination was mere dicta and not a factor in the decision of the case.   We agree with the court below that, "The facts and circumstances disclosed by the evidence are not such as to make it the duty of the court to declare the schedule of rents and rates ordained by the council either unlawful, unreasonable or unjustly discriminatory, and the bill will, therefore, be dismissed." That the city supplies itself with free water for fire protection, etc., and also supplies free water to certain public charities, is not an abuse of discretion and affords its pay customers no just ground for complaint: see Preston v. Water Commissioners, 117 Mich. 589.

The decree is affirmed and appeal dismissed at the costs of appellant.

CONCURRING OPINION BY MR. JUSTICE KEPHART:

I concur in affirming the decree of the court below for the following reasons:

It appears a change was being made in water service in this municipality from flat to metered rates; during this transition period, council cannot be held to a too rigid enforcement of its discretionary power in adopting rates for flat and metered rate consumers,—this fact, to my mind, really controls the present case.

If a flat rate is to be measured by a per thousand gallon charge, and it is a permanent rate, as distinguished from what we have just discussed, then a rate of six cents, as against fourteen cents per thousand gallons for metered rates, might well be accounted discriminatory, and could not be justified under any allocation of cost in this case, or on other economic basis.

Flat rate is not in any sense measured by gallons, except as shall be hereafter explained.   As I understand the statutes, a flat rate is arrived at by considering the facilities used, size of the branch water line or individual service pipe, number of spigots, bathrooms, toilets and other water facilities in the house or on the lawn; to all of which may be applied a graduated scale as to probable

individual consumption. This individual consumption feature is lost sight of where there is a free flowing distribution system, that is, by gravity, with unlimited supply, as some water companies in our State possess. In the present case, there was not sufficient evidence to show that this measure for flat rate discriminated against the metered rate. In many instances the flat-rate customers, through absence or other cause, pay a much higher rate than they would on a meter, and, while there may have been carelessness in the use, the enormous difference between the metered consumption and non-metered may be accounted for in many ways not attributable to actual flat-rate consumption. At all events, the evidence is too unsatisfactory to hold that, on a cost per gallon basis, there was discrimination; for the price of the latter, on the basis argued, is at best a guess.

The fact that water is wasted by flat customers proves nothing; they do not have the right to waste it, and waste *cannot enter properly as a factor* in making up the flat rate. Customers pay for a normal use, dependent on the rule above expressed, without waste. If the latter occurs, it is a violation of an implied condition attaching to flat-rate users.

In my opinion, the gift of water to charities cannot be supported legally unless municipalities have the power to contribute money or property donations; no act is called to our attention giving them this power. This, however, does not condemn the rates as being unreasonable or discriminatory, any more than the omission of a taxpayer's property from assessment shows lack of uniformity. The right to collect from these institutions exists as before, and the officers whose duty it is to so collect are responsible in proper proceedings.