ANTLERS HOTEL, INC., a corporation,
Appellant (Defendant below),

v.

TOWN OF CITY OF NEWCASTLE, a municipal
corporation, Appellee (Plaintiff below).

Ira BALDWIN, Appellant (Defendant below),

v.

TOWN OF CITY OF NEWCASTLE, a municipal
corporation, Appellee (Plaintiff below).

Nos. 2865, 2866.

Supreme Court of Wyoming.

July 14, 1959.

341 Pac.2d. 951

296

Ellery, Gray & Hickey, Cheyenne, for appellant.

Thomas L. Whitley, City Atty., Newcastle, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

298

## OPINION.

Mr. Chief Justice BLUME delivered the opinion of the court.

The Town of the City of Newcastle, a municipal corporation, brought an action against the Antlers Hotel, Inc., defendant below and appellant here, and also an action against one Ira Baldwin who conducted a laundry in the Town of Newcastle and was defendant below and is appellant here. The two actions were consolidated in the court below and have been con-

solidated on this appeal, involving as they do similar facts and identical rules of law and claims in connection therewith. The town asked judgment against the Antlers Hotel for the sum of $493.14 due for the use of the sewer system of the town from September 28, 1955, to November 29, 1957, and also asked judgment against Ira Baldwin for $269.96 for the period between 1953 and 1957, alleging that the amounts due have been unpaid. The town further asked judgment for penalty and attorneys' fees. After answer was filed and the pre-trial conference held and answers to interrogatories submitted, the court entered judgment in favor of the town against the respective defendants and appellants here for the amounts claimed in the complaints, except that it refused to give judgment for any penalty or counsel fees. From that judgment the defendants below and appellants here have appealed to this court.

If we understand the contentions of the appellants herein, they are as follows: First: the service charges for sewer made against them are excessive and in violation of § 29-2706, W.C.S.1945; Second, the rates, that is to say, service charges, established by the town are arbitrary, capricious, discriminatory and not uniform. We shall consider these contentions in the order above mentioned.

1. Before stating what appears to be the contention of appellants in greater detail, we should perhaps first refer to the fact that it is stipulated that the sewer or, rather, part of the sewer used by the Antlers Hotel was constructed in 1920 and that part of the sewer used by Baldwin was constructed in 1932. The parts of the sewer so constructed were paid for by bonds constituting a general obligation of the town and they

have been fully paid. Subsequently in 1949, revenue bonds were issued by the town in the sums of $64,000 and $200,000. In 1954 further revenue bonds were issued in the sum of $120,000. These last bonds were issued for a sewer disposal plant as shown by the following agreement between the parties:

> "It is agreed that the plaintiff town constructed a sewer disposal unit in the form of a sewer lagoon and constructed a main sewer line from the city limits of the town to the sewer lagoon which is located outside of the town and that this construction took place during the year 1954. That all of the sewage of the town, including the sewage of both defendants, passes through the main line and into the sewer lagoon which was constructed in the year 1954. That the construction in 1954, above referred to, was financed by a water and sewer revenue bond issue, which was issued by the town council in that year in the amount of $120,000 pursuant to statute."

It appears to be the contention of appellants that in view of the fact that their sewer was originally constructed for them in 1920 and 1932 and the construction cost was paid for by general obligation bonds which have been paid, they are not responsible in any way for charges arising by reason of any revenue bonds issued subsequently, and that as the service charges against the appellants contain a sum levied by reason of the revenue bonds, these charges are excessive and illegal. In other words, counsel seem to think that the only just service charge which may be made against appellants is that arising out of the operation and maintenance plus the depreciation charge for that part of the town's sewer system which existed at the time the sewer system was established in 1920 and 1932 respectively. They claim that they are not benefited by anything else and that the town cannot

consider the system as a whole insofar as appellants are concerned and levy a service charge or rate accordingly on all the users of the system. We think counsel are mistaken. It would be impractical for a city or town to fix one rate based on the construction of part of the sewer system at one time and fix another rate for another part of the sewer constructed at another time and still another rate for the part of the sewer constructed subsequently. It is very clear that the sewage disposal plant was of benefit to appellants as well as to every other user of the sewer system. As already shown, the sewage of both appellants passes through the main line and into the sewer lagoon which was constructed in 1954. Hence, it was of benefit to the appellants to the same extent as to any other users of the sewer system. The record does not show for what purpose the bonds of 1949 above mentioned were issued. Assuming that they were issued for the purpose of extending the sewer system to other parts of the town, it by no means follows that the appellants were not benefited, for every owner of property in a city or town is interested for sanitary purposes that a sewer system should be established throughout the community, and a distinct benefit accures to every property owner if that is done.

A case very closely in point herein is the case of Morse v. Wise, 37 Wash.2d 806, 226 P.2d 214. The difference in that case is that the appellants had paid for their sewer by special assessments, while in the case at bar it is claimed that their sewer was paid for by general obligation bonds as already mentioned. The appellants in the Washington case claimed that they should not be compelled to pay any service charges by reason of the extension of the system because they were in no way benefited thereby, just as is claimed

in the case at bar. In that case the city was authorized to create a special fund or funds for the sole purpose of defraying the cost of the public utility or additions, betterments. or extensions, just as is true here. The court stated, among other things, that when the city provided for the issuance of revenue bonds and made service charges to pay the cost and operation thereof it acted pursuant to the police power so as to protect the health of its inhabitants. It continued as follows at 226 P.2d 217, 218:

"* * * The act does not exclude sewer systems constructed pursuant to local improvement statutes, but it contemplates the raising of revenue by fixing rates and charges for the furnishing of service to all of those served by the system of sewerage as a whole. * * *

\* \* \* \* \* \*

"It was not necessary that the city council give consideration to the fact that appellants have been assessed for the cost of construction of the part of the sewer system serving them and their properties when fixing sewer service charges. The property owners did not 'acquire' the mains and laterals when they paid the cost of construction. * * *

\* \* \* \* \* \*

"* * * The legislature has supplied cities and towns with an additional method of raising revenue to defray the expense connected with sewage disposal facilities and to fix rates and charges for the use thereof. The sewer system serving appellants and those similarly situated was constructed by the city of Chelan, and although the greater part of the cost was paid by the property owners served, the city had control over it and had the duty to maintain it. The act gave the city the authority to integrate it into the later constructed sewer system and make a service charge to all whose property is served by the entire sewer system. * * *"

We agree with the reasoning in this case.

As already stated, counsel for appellants refer to § 29-2706, W.C.S.1945, and think that the second portion thereof, in conjunction with the last sentence which is italicized by them and in this opinion, lends support to their contention. We do not think so. The section reads as follows:

> "Any municipality borrowing money and improving or constructing or acquiring and improving a sewerage system under the provisions of this Act [§§ 29-2701—29-2711], is authorized and directed to charge and collect from the users of such system at a rate which shall be sufficient at all times to pay the cost of operating and maintaining such system, provide an adequate depreciation fund and pay the principal and interest on the bonds issued by the municipality under the provisions of this Act.

> "Any municipality that owns and operates or that may hereafter own and operate a sewerage system constructed or acquired under the provisions of any law of this state may, by ordinance, provide that the users of such system shall pay a service rate sufficient to defray the cost of operating and maintaining such system, and of providing an adequate depreciation fund thereof and thereafter such municipality is authorized to charge and collect such service rate for such purpose *but no tax or other charge shall thereafter be assessed against the users of such sewerage system for such purpose.*" (Emphasis supplied.)

The second portion of the section authorizes a service charge for (1) operation and maintenance and (2) for a depreciation fund. It fails to refer to the payment of principal and interest and states that no other tax or charge may be made. Counsel for appellants contend that under this provision they are not liable

for any service charge for the purpose of paying principal and interest. Now it is clear that the second part of the section applies to all users of the sewer system alike, not merely to users situated as are appellants. So if the contention of appellants were correct, there would be no one chargeable with the payment of the principal and interest of bonds. That, of course, cannot be true. What was meant by the italicized portion, namely, "but no tax or other charge shall thereafter be assessed against the users of such sewerage system for such purpose" is difficult to say, and counsel for appellants have not been able to enlighten us. One thing is certain, namely, that we must construe the whole section together. We cannot construe it to mean that the first portion authorizes a service charge for the payment of the principal and interest of the bonds and that the second portion denies the right to do so. The section as a whole authorizes service charges to be imposed for three purposes, namely, (1) to pay for the operation and maintenance of the system, (2) to provide an adequate depreciation fund and (3) to pay the principal and interest on the bonds. It is probable that the italicized portion above mentioned has reference only to the first two purposes above mentioned, without having any reference to the third purpose and without meaning to affect the right to levy a service charge for that purpose.

2. It is further claimed that the charges against the appellants are excessive by reason of the fact that the town accumulated a sum of money in excess of some $73,000. The record is somewhat confusing in that matter. Pages 53 and 54 of the record show that the accumulation amounts to $31,712.45, which we think is not excessive. Furthermore, we could not say that even the amount of $73,000 would be excessive. It

could always be used for the purpose of paying the principal and interest on the bonds so that we cannot say in what respect the appellants would be prejudiced.

3. As heretofore stated, appellants claim that the rates established were arbitrary, capricious, discriminatory and not uniform. The burden of proof in that connection was upon the appellants. 73 C.J.S. Public Utilities § 26, p. 1048. Not every discrimination is condemned but only a discrimination which is arbitrary, in view of the fact that it is impossible to measure the justness of a rate upon a mathematical basis. See Caldwell v. City of Abilene, Tex. Civ.App., 260 S.W.2d 712. Section 29-2707, W.C.S.1945, provides that a rate shall be fixed which shall equitably distribute the cost of service between the users, and the question here is whether or not appellant has shown that this provision has been violated.

The Town of Newcastle operates its water and sewer system as one system, pursuant to the authority of § 29-2702, W.C.S. 1945 (1957 Cum.Pocket Supp.). It enacted an ordinance in 1949 fixing water rates and sewer service rates. It enacted in that connection § 15 of the ordinance reading as follows:

"Section 15: The owner or occupant of any commercial premises who by reason of special circumstances finds that the foregoing rates are unjust or inequitable as applied to his premises shall make written application to the governing body stating the circumstances and requesting a different basis of charges for water and sewer services to his premises. If such application be approved, the governing body may by resolution fix and establish fair and equitable rates for such premises to be effective as of the date of such application and continuing during the period of such special cir-

cumstances. Whenever by reason of special circumstances the governing body finds that the foregoing rates are unjust and inequitable as applied to the premises it may by resolution fix and establish fair and equitable rates for such premises during the period of such special circumstances or any part thereof."

The sewer rates are fixed as follows:

"Class 1. Creameries, packing houses, poultry houses, and goods-processing plants, and all contributors of relatively strong sewage.

First 2000 gal. of water used, Minimum $2.00 per month

All over 2000 gal. at 15¢ per 1000 gallons per month

"Class 2. Includes laundries, dry cleaners, gas and oil stations, car washing stations, ice cream parlors, hotels, drug stores, and manufacturing plants.

First 2000 gal. of water used, minimum at $2.00 per month

All over 2000 gal. at 12¢ per 1000 gal. per month

"Class 3. Includes all other users of sanitary facilities;

First 2000 gal. used, minimum at $2.00 per month

All over 2000 gal. used at 10¢ per 1000 gal. per month"

It may be noted that the sewer rates are fixed upon a basis of the amount of water that is used. The ordinance establishes three different classes. No ob-

jection is made by appellants as to these classes. In each case the minimum charge is $2 per month. Insofar as the ordinance is concerned, all parties using the sanitary facilities pay a meter rate. No flat rate is provided for in the ordinance. It appears, however, that there are twelve business firms on flat rates but that these rates have been determined in each case by the town council according to the provisions of § 15 of the ordinance, the rates varying from $2 to $12 per month. It has not been shown that the action of the town council was without justification in making these provisions in these special cases. Aside from those, it appears that there are 404 users on flat rates as against 699 users on meter rates. We may take it for granted, we think, that these 404 users on flat rates are owners of residential properties and who are hardly in the same situation as are commercial users. A flat rate in some cases where others pay by meters is not per se illegal or arbitrary or discriminatory and is not per se an unjust rate. Thus it is said in the case of Jarrett v. City of Boston, 209 Ga. 530, 74 S.E. 2d 549, 551, 40 A.L.R.2d 1327, which states the rules generally applicable in cases such as that before us, as follows:

"3. Where a municipality, as here, owns and operates a waterworks system, it is fundamental that its rates for water must be uniform, in the sense that they must not be unreasonably or unjustly discriminatory as between consumers; but it is not of itself unreasonable or unjust discrimination to furnish water to some consumers at flat rates and to others of the same class at meter rates, even though the rate by the gallon actually used is ordinarily lower to the former than to the latter. 43 Am.Jur. 691, § 180; 67 C.J. (Waters) 1257, § 811; 4 McQuillin on Mun. Corp., p. 3591; Consolidated Ice Co. v. City of Pittsburgh, 274 Pa.

558, 118 A. 544; Richardson v. City of Greensboro, 174 N.C. 540, 94 S.E. 3; Parker v. City of Boston, 1 Allen, Mass., 361. As was held by the Supreme Court of Pennsylvania in the Consolidated Ice Co. case, supra, the fact that flat rate consumers pay less per gallon for water than meter consumers does not show discrimination. A difference in conditions of service justifies a difference in charge; but when a difference in charge is based on a difference in service, it must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination. Western Union Telegraph Co. v. Call Pub. Co., 181 U.S. 92, 21 S.Ct. 561, 45 L.Ed. 765. And in cases involving the rates of a city-owned-and-operated waterworks system, it will be presumed, in the absence of a clear showing to the contrary, that the city's governing body properly performed its official duty, and did not exceed its authority, in fixing the city's water rates, adjusting them between consumers upon a difference in conditions of service. * * *"

See also the case of Consolidated Ice Co. v. City of Pittsburgh, 274 Pa. 558, 118 A. 544; and Gericke v. City of Philadelphia, 353 Pa. 60, 44 A.2d 233.

As already stated, there can hardly be any doubt that the use of the sewer in residential property stands upon a different footing from the use in connection with commercially-used properties. For instance, in these western states lawns are irrigated during the summer season. The use of water during that season is hardly a proper criterion as to the rate that should be paid during that season for the use of a sewer. That might be remedied perhaps by applying to residences an average rate used during the winter months, or some other method might be devised by which an equitable rate could be fixed. We have no evidence before us which shows that, as a matter of fact, the

flat rates for residential property are unjust or discriminatory. For aught that appears in the record, residential properties overpay rather than underpay for the use of the sewer. As stated before, the burden of proof in connection with the contention here mentioned is upon the appellants. We think they have failed in that burden and the judgment of the trial court must, accordingly, be affirmed. It is so ordered.

Affirmed.