# Girard Life Insurance Co., *versus* City of Philadelphia.

Complainants, who were the mortgagees of certain premises, purchased the same at sheriff's sale, under a foreclosure; they tendered the water-rent for one year on each of said premises to the water department, which was declined, on the ground that there was three years water-rent in arrears, with penalties, and notice was given complainants, that unless said arrears were paid, the water supply would be cut off from said premises, under the authority of the ordinance of March 22d 1862. Complainants filed a bill to restrain the city from such action. *Held*, that they had no equity to restrain the city, and that payment of all the arrears due before the sheriff's sale could be enforced in the mode prescribed by the ordinance. *Held, further*, that while the neglect of the water officials to enforce the ordinance may make them personally liable to the city for any loss by such omission, such neglect could not be taken advantage of by the water tenant or one claiming under him.

| | |
|---|---|
| 88 | 393 |
| 132 | 291 |
| 88 | 393 |
| 19 SC | 355 |
| 88 | 393 |
| 206 | 257 |
| 88 | 393 |
| 27 SC | 84 |
| 88 | 393 |
| 37SC | 125 |
| 37SC | 129 |
| e37SC | 130 |
| f37SC | 133 |

January 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1878, No. 213. In Equity.

Bill in equity filed by the Girard Life Insurance Annuity and Trust Company, against the City of Philadelphia and the Chief Engineer of the Water Department. The facts will be found fully stated in the opinion of this court.

*John J. Ridgway, Jr.*, for appellants.—Under the provisions of the ordinance of March 22d 1862, it is made the imperative duty of the officials of the water department, in case of the non-payment of water-rent due for any year on the first day of September, to immediately detach the ferrules from the delinquent premises. These arrears would have had no existence if these officials had done their duty.

*C. E. Morgan, Jr.*, Assistant City Solicitor, and *W. N. West*, City Solicitor for the city.—If the city officials are delinquent, their superior authorities may call them to account, but their failure to do their duty furnishes a tenant with no ground of complaint.

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1879.

This was a bill in equity, filed by the Girard Life Insurance Annuity and Trust Company, against the City of Philadelphia, and the Chief Engineer of its Water Department, praying for an injunction to restrain the defendants from cutting off the water supply to certain premises which said company had purchased at sheriff's sale in the year 1876. The bill sets forth that the complainants had tendered the water-rent for one year upon each of the said premises respectively, which was declined, and they were informed by the water department, that water-rent for three years was due on each, together with a penalty of fifteen per centum, and that unless said arrears, with the penalty were paid, the water supply would be stopped under the authority given by the ordinance of March 22d 1862. The complainants refused to pay, and filed this bill for the purpose of preventing the city from stopping off the water. The defendants demurred to the bill, but subsequently withdrew the first six causes of demurrer, whereupon it was agreed that the bill and demurrer should stand as a case stated.

This is a very inartificial mode of stating a case, and is not to be commended. A case stated should consist of a clear statement of the facts upon which the court is asked to pronounce judgment. The forms of equity pleading are not appropriate; and were not intended for such purposes as this.

The complainants concede the complete power of the city to make any conditions precedent to supplying the citizens with water. The supplying of water and gas to a city is not a municipal duty. Hence, when the city undertakes to do so, it acts, not by virtue of any rights of sovereignty, but exercises merely the functions of a private corporation: Western Saving Fund Society *v.* The City, 7 Casey 175; Wheeler *v.* The City, 27 P. F. Smith 338. The introduction of water by the city into private houses is not on the footing of a contract, but of a license which is paid for: Smith *v.* The City, 31 P. F. Smith 38. It may very well be that when a license has been given by the city to the owner of a house to use the water, such license may not be withdrawn arbitrarily, or from mere caprice. But it is equally clear that the city may adopt such rules in regard to the use of the water and the payment therefor, as the municipal authorities shall deem expedient. All this is admitted by the complainants. Their contention is, that while councils may so legislate, they have not done so, and that the ordinance of March 22d 1862, does not authorize the water department to demand from them more than the water-rent for one year as a condition of supplying their premises with water.

The ordinance referred to is as follows: "That all water-rents shall be payable to the Register of Water-rents at his office annually in advance on the second Monday of January; and upon all

water-rents upaid upon the 1st day of May in any year there shall be charged the sum of five per centum, and upon all rents unpaid on the 1st day of July in any year, there shall be charged an additional sum of ten per centum; and if such rent, with the said additional charges, shall remain unpaid on the 1st day of September in any year, the said register shall notify the chief engineer of the water-works of the names of such delinquents, who shall cause the ferrules of all such delinquent water-tenants to be detached from the pipe of conduit, and suit be instituted for the recovery of such rent; and after such ferrules shall have been detached, the water shall not again be supplied or furnished to the said premises except upon payment of all arrears of water-rent, and the sum of $2 for expenses incurred; and a printed notice, containing the first section hereof, shall be left upon the premises." There is, of course, no personal liability on the part of complainants to pay these arrears of water-rent. They concede the right of the city to turn off the water for the non-payment of one year's rent immediately preceding the sheriff's sale, but that as to the prior years, the city having neglected to enforce the ordinance according to its terms, and allowed the rent to accumulate, cannot now cut off the supply of water for its non-payment. It has been gravely argued that because the city indulged some of its water-tenants, and did not turn off the water when it might have done so, it has lost the right to do so as a means of enforcing the payment of the arrears thus allowed to accumulate. This is an extraordinary proposition, and unless it is supported by the terms of the ordinance referred to, cannot be sustained. I find nothing in the ordinance to justify such a conclusion. It provides that the names of all water-tenants who shall be delinquent on the 1st day of September shall be furnished to the chief engineer, whereupon that officer shall cause the ferrules in all such cases to be detached; and that thereafter the water shall not be again supplied to said premises except upon the payment of all arrears of water-rent. What is meant by "all arrears of water-rent"? The complainants contend that it refers to the rent of the one year only. There is nothing in the ordinance to warrant such a conclusion. It clearly means all arrears up to the time of detaching the ferrules. The case was argued upon the theory that the ferrules are to be detached upon the 1st day of September. The ordinance does not say so. It does not designate the time when the names of delinquents are to be furnished to the chief engineer, nor when the latter shall cut off the ferrules. Undoubtedly it was intended to be done within a reasonable time after the first of September; yet the provisions of the ordinance are merely directory, and may be waived by the municipal authorities. The water-tenant has no right to complain that he has been indulged, and additional time given to pay his rent before the city resorted to the harsh measure of stopping off the water from his premises. As well might a mortgagor refuse to pay his arrears of interest because his easy creditor had

[Girard Life Ins. Co. *v.* Philadelphia.]

allowed them to accumulate. Conceding this to be so, it is alleged that these complainants occupy a better position as purchasers at a sheriff's sale; that as to them there can be no such arrears of water-rents because the city "forbids them to exist." I am unable to see that the rights of the complainants rise any higher than those of the water-tenants, to whom they have succeeded. They have no standing to complain that the city did not enforce its ordinance strictly. The city owed no duty to protect the mortgages of the complainants, and hence as to them could be guilty of no neglect. Nor were complainants misled. The water department is open to all, and any purchaser at a judicial or other sale can readily ascertain if the water-rent is in arrear. But it is said the complainants were in one sense involuntary purchasers; that they were compelled to buy to save their mortgages. This, if true, gives them no equity. At most, it proves that they have made a bad investment, a misfortune they share in common with many other corporations and individuals, the result of great and unexpected shrinkage in values.

With equal reason might a mortgagee complain of arrears of taxes which are sometimes allowed to accumulate on the property mortgaged. For the last few years this has been a more serious peril to mortgagees than the accumulation of water-rents. The analogy between the cases is believed to be complete, for while, in the latter instance, there is the ordinance referred to for detaching the ferrules, yet, as before stated, that provision was intended solely for the benefit of the city, and not for the water-tenants or their mortgagees. Both evils may be avoided, in my opinion, by a provision in the mortgage, that at stated periods in each year the mortgagor shall produce to the mortgagee the evidence of the payment of taxes and water-rents, and that default in such payment shall make the mortgage-debt become due and payable, with a scire facias clause, as in the case of the non-payment of interest on the mortgage. Indeed I am informed that this is now done in many instances.

It is not true, in point of fact, that the city has limited the amount of arrears of water-rent necessary to be paid by a purchaser at sheriff's sale to one year. No such limitation is to be found in the ordinance of March 22d 1862, or elsewhere. In the absence of any such restriction, the right of the city to detach the ferrules for the non-payment of all arrears cannot be successfully questioned.

As before said, the ordinance fixes no precise time when the ferrules shall be detached. The water-rent is payable annually in advance, and the water may be cut off at any time after the 1st of September. The neglect of the chief engineer to enforce the ordinance may make him personally liable to the city for any loss in consequence of such omission. The water-tenant, however, who receives the benefit of the indulgence, cannot complain; nor can a purchaser of his title at a judicial sale, for the reasons already given.　　　　　　　　　　　　　　　　　Judgment affirmed.

SHARSWOOD, C. J., and GORDON, J., dissented.