# Kohler, Appellant, *v.* Reitz.

*Municipalities—Water supply—Regulation—Stopping supply—Acts of May 23, 1889, P. L. 277, and June 4, 1901, P. L. 364.*

1. The supplying of water and gas by a city is not a municipal duty, and if it assumes the performance of that function it acts under authority merely, as a business corporation and not under municipal obligation. The municipality may, however, by ordinance make reasonable rules and regulations to insure the payment of bills, among others, that of stopping the supply unless all arrearages are paid, whether owing by the tenant in possession or his predecessors.

2. Where a person purchases a property in a city of the third class, at a sheriff's sale, and pays for the same a sum exceeding the aggregate amount of the liens and claims which the city holds against the property, and a claim for water rent which had accrued under a previous ownership, is not paid out of the proceeds, and the purchaser refuses to pay the same, the city may compel payment by cutting off the supply of water from the premises in accordance with an existing regulation established by ordinance.

3. The Act of June 4, 1901, P. L. 364, relating to the municipal liens upon real estate does not take from a municipality the remedy of cutting off water supply from property in order to enforce the payment of water rent.

Argued April 12, 1910.   Appeal, No. 164, April T., 1910, by plaintiff, from order of C. P. Crawford Co., Feb. T., 1910, No. 40, refusing writ of mandamus in case of Otto Kohler v. John H. Reitz, Mayor, and F. M. Graff et al., Councilmen of the City of Meadville.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Petition for mandamus.   Before PRATHER, P. J.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in refusing mandamus.

*J. W. Smith,* for appellant.—This court in Martin v. Greenwood, 27 Pa. Superior Ct. 245, affirms the proposition that all other general, local and special acts in regard to this subject were repealed by the act of June 4, 1901.   It is respectfully submitted that the same proposition applies to this case.   The lien or the right of lien for water rates was discharged by the sheriff's sale: Philadelphia v. Powers, 214 Pa. 247; Com. v. Gillam, 8 S. & R. 50; Altoona v. Stehle, 8 Pa. Dist. Rep. 25.

*James P. Colter,* with him *Manley O. Brown,* for appellee, cited: Girard Life Ins. Co. v. Philadelphia, 88 Pa. 393; Rieker v. Lancaster City, 7 Pa. Superior Ct. 149; Fisher v. Harrisburg, 2 Grant (Pa.), 291.

OPINION BY PORTER, J., April 17, 1911:
The plaintiff presented his petition to the court below averring that the city of Meadville, a municipal corporation of the third class, owns and operates a water system for supplying the citizens and residents within the corporate limits with water; that among the persons so sup-

plied with water for a number of years were the occupants
of a certain dwelling house which had been sold at sheriff's
sale, on November 8, 1909, under proceedings upon a
mortgage executed by the owner; that at said sale the
plaintiff became the purchaser of the property at his bid
of $2,150, which sum he paid to the sheriff and which ex-
ceeded the aggregate amount of the liens and claims which
the city held against the property; and that since the sale
the sheriff had executed and delivered to the plaintiff a
deed for the property, and the same was now occupied by
a tenant under a lease from the plaintiff. The petition
further averred that soon after the sale of the premises by
the sheriff, the city by its agents and employees turned off
the water supply to said premises and refused to restore
the flow of water thereto; that the amount of the water
rent which the city was entitled to charge to the end of
the then current quarter was $1.25 and that the cost of
turning on the water was fifty cents, which sum, to wit,
$1.75, plaintiff had tendered to the proper city officer and
demanded that the supply of water be restored to the
premises, but that the city officers had refused to turn on
or restore the supply of water to said premises until the
amount of the water rent due from the former occupant or
owner had been paid. The petition prayed for a writ of
mandamus commanding the officers of the city to turn on
the water supply and restore the flow of water from the
city main to the property of which the plaintiff had be-
come the owner. The petition did not disclose whether
the officers of the city had shut off the water supply from
the premises before or after the sheriff had executed and
delivered his deed to the plaintiff. The defendants filed
an answer admitting the ownership and control of the
waterworks by the city and conceding that the plaintiff
had acquired title to the premises in question by the
sheriff's sale and at the price in the petition stated, and
that the plaintiff had tendered the sum of $1.25 as pay-
ment in advance for the unexpired part of the then current
quarter and the sum of fifty cents for turning on the water;

and that the officers of the city in charge of the water-works had refused to restore the supply of water to the premises until the water rates or rentals due the city of Meadville for water supplied to the premises had been paid. The answer stated that at the time the water supply had been shut off from the premises there was due and unpaid to the city of Meadville the sum of $19.45 for water supplied to the premises, while in the possession of the former owner, during the current year, 1909, and that the full sum of $19.45 remained unpaid and in arrears.

The answer recited, as justifying the defendants in cutting off the supply of water and refusing to restore it, an ordinance of the city of Meadville approved April 2, 1900, requiring the water commissioners of the city to furnish the city treasurer "for collection on or before the fifth days of April, July, October and January of each year, a duplicate of the water rates for the succeeding quarter, respectively, and the city treasurer shall thereupon proceed to collect the same, and he shall report on the first day of each month to the water department, on blanks furnished by them, giving a statement of the amounts collected, to the first of each month." "All water rates for the water furnished by the city to the inhabitants thereof, and all consumers, shall be due and payable to the city treasurer quarterly in advance, on the fifth day of April, July, October and January of each year. And if not paid before the first day of the succeeding quarter, respectively, a penalty of five per cent shall be added thereto by the city treasurer for nonpayment and collecting the same. And after the expiration of the first day of the third month of each quarter, respectively, the city treasurer shall notify the superintendent of the water department, in writing, to shut off the water supply from the premises where default has been made, and the water supply shall not be again turned on by the water department until notice shall be given by the city treasurer to the water department that all water rates and penalties in arrears and an additional charge of fifty cents for turning on water again

have been paid." The answer further averred that no lien was entered of record against the said property for the water rentals which were due to the city and unpaid, and that, in accordance with the ordinance above recited, the city of Meadville elected to exercise the right given it by the ordinance to turn off the water supply from said premises as means of enforcing the payment of water rents due and in arrears, and that in this course it followed its usual and uniform custom. The answer further averred the readiness of the city and its officers at any time to turn on the supply of water to said property as soon as the amount of the water rates in arrears and the charge of fifty cents for turning on the water were paid. The answer further averred that the plaintiff could have obtained knowledge that said water rates were unpaid by inquiring at the office of the city treasurer, and that notice had been publicly given at the sale, both in writing and orally, that the amount of water rates now claimed was due the city of Meadville and unpaid. The plaintiff demurred to the answer, and the court below having entered judgment in favor of the defendants upon the demurrer, we have this appeal by the plaintiff.

The supply of water and gas by a city is not a municipal duty, and if it assumes the performance of that function, it acts under authority merely, as a business corporation, and not under municipal obligation: Bower v. United Gas Improvement Company, 37 Pa. Superior Ct. 113. The rates which those who use the water furnished by the city pay may be regulated by contract; Penn Iron Company v. Lancaster, 25 Pa. Superior Ct. 478. The introduction of water by the city into private houses is not usually, however, upon the footing of a contract, but it partakes of the nature of a license for which the rates established by the city are paid by the licensee: Smith v. Philadelphia, 81 Pa. 38. When a license has been given by the city to the owner of a house to use the water, such license may not be withdrawn arbitrarily, or from mere caprice. But it is equally clear that the city may adopt such rules in regard

to the use of water and the payment therefor as the municipal authorities shall deem expedient. There is in such matters necessarily committed to the municipal authorities a discretion to determine what regulations, between the city and the consumers of water, are necessary to protect the interests of the city in the business undertaking in which it is engaged. The courts will not strike down such a regulation unless it be shown to be unreasonable. . The Act of May 23, 1889, P. L. 277, providing for the incorporation and government of cities of the third class, in art. XII, secs. 10 and 12, expressly confers upon cities of the third class power to provide by ordinance for the collection of water rates, fix the time when such rates shall be payable, and the penalties for nonpayment thereof and to ordain such rules and regulations as may be necessary for the carrying into effect of the powers conferred upon the city. "That a municipality or corporation furnishing water or gas may by ordinance or by-laws make reasonable rules and regulations to insure the payment of bills, among others, that of stopping the supply unless all arrearages are paid, whether owing by the tenant in possession or his predecessors, has been settled:" Girard Life Insurance Company v. Philadelphia, 88 Pa. 393; Brumm's App., 22 W. N. C. 137. "But there must be notice to, or knowledge by the incoming tenant of such rule. In case of a municipality the regulation must be by ordinance; of this all have actual or constructive notice:" Miller v. Wilkes-Barre Gas Company, 206 Pa. 254. This case is directly ruled by the Girard Life Insurance Company v. Philadelphia, 88 Pa. 393, unless recent legislation takes it out of the principle established by that decision. The Girard Life Insurance Company had purchased property at sheriff's sale; there was then due the city water rent for water furnished to former tenants and owners during a series of years, and the city threatened to turn off the water unless this water rent in arrears was paid. The insurance company filed a bill in equity and sought to restrain the city from cutting off the supply of water from

the premises. The city asserted the right to cut off the water supply under the provisions of an ordinance somewhat similar to those under which the defendants acted in the present case. The Supreme Court held that the regulation requiring the shutting off of the water, in case the water rent was not paid, was a reasonable business regulation and that the city might properly enforce it although the plaintiff had acquired title to the property at a sheriff's sale. In that case as in this the contention was that the purchaser at the sheriff's sale was entitled to receive the water from the city without paying the water rent in arrear at the time of the sale, and, upon this point, Mr. Justice PAXSON, who spoke for the court in that case, said: "The water department is open to all, and any purchaser at a judicial or other sale can readily ascertain if the water rent is in arrear." The principles upon which that case was decided were recognized and reaffirmed in Commonwealth ex rel. v. Philadelphia, 132 Pa. 288. The city of Meadville had authority to pass and enforce this ordinance. This was one means at its disposal to secure the payment of the bills which became due the city in carrying on the business operation in which it had lawfully engaged. The act of May 23, 1889, provided, also, a remedy for collecting the water rents which consumers had failed to pay, by authorizing the registration of claims in the city lien dockets in the same manner as provided in the case of unpaid city taxes, with like force and effect as to the lien thereof.

The appellant contends that the right of a municipality to ordain a regulation requiring the shutting off of the supply of water to property, in case the owner or occupier of the premises fails to pay for the water used thereon, and refusing to restore the connection until the water rent in arrear is paid, is taken away by the Act of June 4, 1901, P. L. 364, entitled, "An act providing when, how, upon what property, and to what extent, liens shall be allowed for taxes, and for municipal improvements, and for the removal of nuisances; the procedure upon claims filed

therefor; the methods for preserving such liens and enforcing payment of such claims; the effect of judicial sales of the properties liened, and the manner of distributing the proceeds of such sales." This contention is founded upon the final clause of the last sentence of the statute, which is in these words: "it being intended that this act shall furnish a complete and exclusive system in itself, so far as it relates to the practice and procedure for the filing, collection and extent of tax and municipal claims, the right to file which accrued after the approval of this act." The legislative intention is to be gathered from all the provisions of the statute and not from a fragment of this final sentence. The subject-matter of this statute was the liens upon property, for taxes and for municipal improvements, and for the removal of nuisances; the extent of those liens, the procedure upon claims filed therefor; the methods of preserving such liens and enforcing payment of such claims; the effect of judicial sales upon the properties liened, and the manner of distributing the proceeds of such sales. The word "property," as used in the act, is defined, in the first section, to mean "the real estate subject to the lien, and against which the claim is filed as a lien." The entire statute deals with the creation of liens upon real estate, the manner in which those liens shall be filed, continued, revived and proceeded upon, and the extent to which and order in which they shall be entitled to participate in the distribution of the proceeds of a sheriff's sale of real estate. The title of the act did not give notice that it was the legislative intention to deal with any other subject, nor is there in the body of the act anything from which it could be inferred that it was the legislative intention to deal with any subject other than the right of lien upon real estate for taxes and municipal claims, and the manner in which that lien should be. enforced. This statute expressly repeals a large number of earlier acts which were entirely inconsistent with its provisions, and as to other statutes, among which is the Act of May 23, 1889, P. L. 277, it repeals only such parts as

provide, "either, (a) For the extent of the liens for taxes or for municipal improvements, either before or after the filing of claims therefor; or, (b) for the practice or procedure in relation thereto, or in continuing the lien of, or enforcing payment of, such tax or municipal claims after filing." The act of 1901 repeals those provisions of the act of 1889 which gave the city a lien upon the real estate for water rents and provided a manner in which that lien should be enforced. When the city elects to proceed against the real estate, in rem, it must resort to and be governed by the provisions of the act of 1901. The act of 1901 did not take from the state, the counties or the municipalities any remedy which they before that time had for the collection of taxes or claims in a manner other than by a proceeding to charge the real estate with a lien. It cannot be seriously contended that this statute deprived the state, the county or the municipality from proceeding against the owner or occupier of real estate personally, to recover any tax or claim for which he was under previous legislation personally liable. Nor can there be any ground for holding that it was the legislative intention to deprive municipalities of the power to make regulations for the collection of water rents and gas rents, provided that such regulations did not involve the assertion of a right to a lien upon real estate. The specifications of error are dismissed.

The decree of the court below is affirmed and the appeal dismissed at cost of the appellant.