PRUDENTIAL COMPANY OF MINNESOTA v. CITY OF MINNEAPOLIS AND ANOTHER.[1]

January 28, 1938.

No. 31,563.

[1]Reported in 277 N. W. 351.

*R. S. Wiggin,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for appellant.

*C. J. Eisler,* for respondent.

HOLT, JUSTICE.

The city of Minneapolis appeals from the judgment entered in favor of plaintiff. The main assignments of error are that the conclusions of law are not sustained by the findings of fact, and it is thought that a decision may be reached without considering whether or not certain challenged findings of fact are supported by the evidence. The facts not open to dispute are: Defendant owns and operates waterworks supplying water at established rates to private consumers in the city. In the city, at numbers 300 to 310 East Fifteenth street, are large apartment buildings, using the city water, of which Muriel Ford Beery became the owner in 1931, and leased the same in August, 1933, to Carmel Tremont, who continued in possession until March 15, 1935. In the lease the lessee agreed to pay for all city water used on the premises. On March 7, 1934, Muriel Ford Beery and her husband conveyed the premises to plaintiff, a corporation, of which said Muriel and husband are vice-president and president. The city waterworks are operated under the direction of a superintendent, supervised by a city waterworks committee of the city council, in accordance with the city ordinances relating to the city waterworks. The city water is supplied through water meters located upon real estate of the owner or tenant using it, at fixed rates, usually payable quarterly. In case payment is not made promptly, the ordinance requires that the water be shut off, and the supervisor is forbidden to turn it on again until all arrearages are paid. The tenant Tremont was in arrears on December 13, 1934, in the sum of $153.26. It appears that plaintiff ousted the tenant by means of a writ of restitution in a forcible entry and unlawful detainer action, on March 15, 1935, and the city

then threatened to shut off the water supply unless plaintiff paid such arrears. It was paid under protest, and this judgment is for a recovery thereof.

The theory of plaintiff, adopted by the trial court, was that the city by not promptly shutting off the water supply of the tenant estopped itself from exacting payment from the landlord or owner. The city charter, of which the court below, as well as this court on appeal, must take notice, provides in c. 9, § 14: "The City Council may also make rules for the shutting off of water from any premises where rates are payable and remain unpaid." And c. 9, § 15, reads:

"The owner of private property which property has upon it pipes connected with the city water works to convey water upon such property, shall, as well as the lessee or occupant of the premises, be liable to the City of Minneapolis for the rents or rates of all water from said waterworks used upon such premises; which may be recovered in an action against such owner, lessee or occupant, or against any or all of them."

So when plaintiff paid the $153.26 under protest, as found by the court, the city received of plaintiff only what it was authorized by the quoted charter provision to recover of it by suit. It is impossible to see how one having a legal claim against another can be estopped by mere delay of less than a year from asserting and enforcing the claim. The ordinances enacted by the city council and the rules adopted in respect to operating the waterworks systems, and particularly to cutting off the water to premises where the charges are unpaid, were enacted and adopted in order to give the city means to enforce payment speedily, and were not intended for the protection of the owner or landlord as against the occupant or tenant. So the fact that servants or agents of the city were slack or remiss in shutting off the water when the charges therefor were not paid cannot serve to estop the city from at any time demanding and enforcing payment from the one liable under c. 9, § 15, of the charter. No provision is found in the charter, ordinance, or rules relating to the waterworks requiring a landlord or owner to be notified of the failure of the tenant or occupant to pay for the city

water used on the premises. The city, therefore, was within its rights when it, on March 13, 1935, threatened to turn off the water from plaintiff's premises unless the arrearages were then paid. It follows that the payment made, even though made under protest, cannot be recovered in this action, for the city was clearly entitled to the amount it exacted of plaintiff.

Plaintiff has cited many cases where a public officer has been held liable in damages for failure to perform some official act whereby a person has sustained damage, as for instance not filing a conveyance, or docketing a judgment, or not performing some ministerial act to another's hurt. Samples of these cases are Rosenthal v. Davenport, 38 Minn. 543, 38 N. W. 618; Howley v. Scott, 123 Minn. 159, 143 N. W. 257, 51 L.R.A. (N.S.) 137. Nor can any equitable estoppel be found. Plaintiff and its predecessor in title did not show any change in position because of reliance on the city's conduct in respect to the water used by the occupants. Therefore Nell v. Dayton, 43 Minn. 242, 45 N. W. 229; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495, cited by plaintiff, are not applicable. In Girard L. Ins. Co. v. City of Philadelphia, 88 Pa. 393, 395 (which though cited by plaintiff is in favor of defendant), the court said:

"It has been gravely argued that because the city indulged some of its water tenants, and did not turn off the water when it might have done so, it lost the right to do so as a means of enforcing the payment of the arrears thus allowed to accumulate. This is an extraordinary proposition, and unless it is supported by the terms of the ordinance referred to, cannot be sustained. I find nothing in the ordinance to justify such a conclusion."

In that case the plaintiff unsuccessfully sought to enjoin the city from cutting off the city water because of three years' arrearages of water rent accruing before the plaintiff acquired title under mortgage foreclosure sale. Plaintiff also relies on Ford Motor Co. v. Town of Kearny, 91 N. J. L. 671, 673, 103 A. 254, 255, L. R. A. 1918D, 361. That was a case where the water furnished had been taken into the premises without the owner's knowledge after the lease was made. The court canceled liens claimed by defendant against the

74

landlord's land, holding that the statute there involved must be construed so as to limit "the lien to those 'premises to which the water was conducted and supplied' with the express or implied authority of the owner."

It is unimportant in this case whether the ordinance regarding the shutting off of the water from delinquent users be construed as directory or mandatory, for we find nothing therein to indicate that it was the intention to release the claim against the owner for water supplied the occupant after arrears of water rent occurred. We think City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198, 7 Ann. Cas. 1015, is decisive of this case. There a statute identical with the charter provision above quoted was attacked as unreasonable and unconstitutional in that the city could recover against the landlord for electricity used by the tenant. The statute authorized the municipality to supply city water as well as electricity. The authorities are there cited and discussed, and the conclusion reached that the city could recover of the owner or landlord for the charges left unpaid by the occupant or tenant. The authorities are in accord that where, under the proper statutes, arrears for water supplied premises may become a lien thereon, regardless of whether or not it was used by the owner or occupant, a mere delay in enforcing the lien or in failing to shut off the water when charges were not paid does not destroy or vitiate the lien. It is also settled that when the city is authorized to cut off premises from the city water supply for default in payment of charges therefor it may lawfully enforce payment by the use of such means. City of Atlanta v. Burton, 90 Ga. 486, 16 S. E. 214; Turner v. Revere Water Co. 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657, 68 A. S. R. 432 (under the law involved there was no right to acquire a lien); State ex rel. Scotillo v. Water Supply Co. 19 N. M. 27, 140 P. 1056, L. R. A. 1915A, 242. In Rockford S. & L. Assn. v. City of Rockford, 352 Ill. 348, 185 N. E. 623, 627, where a statute authorized the defendant city to create a lien for arrears in water rent supplied premises, it was held that the city had not exercised the power conferred and had established no rules under which city water was to be turned off or on; hence the plaintiff, who had

acquired the property after the arrears in the water rent had occurred, was held entitled to recover the amount paid under protest in order to have the water turned on. But the court states in the opinion [352 Ill. 355] : ."The owner of real estate is under no obligation to furnish water to a tenant unless he has contracted to do so or *a statute has imposed the obligation upon him."* (Italics supplied.) In the instant case the charter provision quoted, equivalent to a statute, has imposed the obligation, which was held valid in City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198, 7 Ann. Cas. 1015.

The judgment is reversed, and the cause is remanded with direction to amend the conclusions of law that the action be dismissed on the merits with costs to defendant.

[1]Reported in 277 N. W. 353.