CASCADE MOTOR HOTEL,
INC., Respondent,

v.

CITY OF DULUTH, a municipal
corporation, Appellant.

No. C6-83-681.

Supreme Court of Minnesota.

May 18, 1984.

Bryan F. Brown, Deputy City Atty., Duluth, for appellant.

Richard L. Bye, Duluth, for respondent.

COYNE, Justice.

The City of Duluth appeals from a judgment granting declaratory and injunctive relief which restrains the City from terminating water and gas service to respondent's premises. We affirm.

From 1968 to 1973 Cascade Motor Hotel, Inc. (Cascade), operated a hotel in Duluth as the vendee in possession pursuant to a contract for deed. In 1976, after the vendee's interest in the contract had twice been transferred, Cascade's vendor conveyed the fee to the last vendees and took back a first mortgage. The new fee owners executed a second mortgage in favor of Cascade. The hotel changed hands once again, and some time later the second mortgage became delinquent. Cascade foreclosed and reacquired ownership of the hotel premises in November of 1982.

From September 1980 until Cascade regained possession of the premises in November 1982, the Water and Gas Division of the City of Duluth,[1] pursuant to a contract with the then owner of the hotel, delivered water and gas services for which it did not receive payment. By November of 1982 the arrearage amounted to more than $31,000.

When Cascade applied for a water and gas service contract, the City declined to enter into a contract until the arrearage was paid and threatened termination of the delivery of water and natural gas. The parties have stipulated that the threat of termination of service was dictated by

---

1. The City of Duluth, a municipal corporation chartered under Minnesota's Home Rule statute, Minn.Stat. ch. 410 (1982), operates a public utili-

ty furnishing water and natural gas to premises situated in Duluth.

§§ 48–208 and 48–209 of the Duluth City Code.

The applicable portion of § 48–208 provides, "For nonpayment of any charges the department may terminate water or gas service, or both, to the premises where the service was received and to any other premises owned or occupied by the customer...." Section 48–209 provides that "[a]fter the supply of water or gas, or both, to any applicant or to any premises has been shut off on account of nonpayment of charges .... neither water nor gas will be again supplied to applicant until all charges against applicant or premises .... have been paid...."

Evocation of the foregoing provisions of the city code is a method of collection favored by the City. The City routinely makes two checks on receipt of an application for utility service—one on the applicant and another on the premises to be serviced. The general collection policy of the City does not include action against delinquent customers. Instead, the City "gets tough," threatening termination for non-payment, only when a new occupant of commercial property requests service. In the present case the interruptible gas account had been delinquent since September of 1980 and the water and sewage account since January of 1981, but the City had made no collection effort until April of 1982 when the arrearages aggregated in excess of $21,000. Although there was never any significant reduction in the delinquency and the accumulated arrearages ultimately exceeded $31,000, the City made only minimal efforts to collect until the change in ownership of the property.

The issue is, of course, the enforceability of §§ 48–208 and 48–209 of the Duluth City Code permitting the City to withhold the delivery of utility service to premises pending the payment of past due bills for utility services delivered pursuant to a contract with a former owner of the premises.

A municipal ordinance must be reasonable—that is, it must be fair, general, and impartial in operation. If an ordinance is arbitrary, oppressive or partial, it is invalid. *Construction and General Laborers Union Local 563 v. City of St. Paul*, 270 Minn. 427, 432–33, 134 N.W.2d 26, 30 (1965). We adopt the conventional rule that liability for the debt of another cannot be imposed in the absence of special agreement or statutory authorization for a lien on the property. *See* Annot., 19 A.L. R.3d 1227 and cases cited therein. As Professor McQuillan puts it: "[I]n the absence of a lien, or contract, a rule, regulation or charter provision is unreasonable and void when it seeks to impose [an obligation to pay for utility services] onto someone other than the one who actually incurred the debt." 12 E. McQuillan, The Law of Municipal Corporations § 35.35d (3d ed. Supp. 1983).

Certainly, there is nothing unreasonable in an ordinance which permits the City, as the purveyor of gas and water, to discontinue service to a customer who has not paid for past services.[2] Termination of service is a not unreasonable remedy for nonpayment when invoked against a customer who contracted, either expressly or impliedly, to pay for the services. *City of East Grand Forks v. Luck*, 97 Minn. 373, 107 N.W. 393 (1906); *Prudential Co. of Minnesota v. City of Minneapolis*, 202 Minn. 70, 277 N.W. 351 (1938); *Siegel v. Minneapolis Gas Co.*, 271 Minn. 127, 135 N.W.2d 60 (1965). In this case, however, the City refuses to deliver utility services to an applicant until the applicant pays the overdue bill for services delivered to another. We hold that the application of §§ 48–208 and 48–209 of the Duluth City Code to impose as a condition for the delivery of utility services to a new applicant the obligation to pay an indebtedness in-

**2.** It should be noted that the ordinance provides for notice in advance of termination and for resolution of disputed charges, and it precludes termination of services during the period from October 1 to April 15 to customers who are unable to pay the charges immediately but who enter into a payment schedule.

curred by a former owner of the premises to be served is arbitrary and unreasonable.

Affirmed.