**Deborah FREEMAN, Barb Bissonnette, on behalf of themselves and other persons similarly situated, Plaintiffs,**

**v.**

**Jimmie HAYEK, individually and in his capacity as Director of the Minneapolis Water Works; Otis Smith, individually and in his capacity as Supervisor of Administrative Services of the Minneapolis Water Works; the City of Minneapolis, a municipal corporation, Defendants.**

**Civ. No. 4–85–694.**

United States District Court,
D. Minnesota,
Fourth Division.

April 30, 1986.

---

Lawrence W. Pry, and James Massy, Legal Aid Society, Minneapolis, Minn., for plaintiffs.

Jerome R. Jallo, and Thomas Kelly, Office of City Atty., Minneapolis, Minn., for defendants.

DIANA E. MURPHY, District Judge.

Plaintiffs Deborah Freeman and Barb Bissonnette have brought this class action against Jimmie Hayek, individually and in his capacity as Director of the Minneapolis Water Works, Otis Smith, individually and in his capacity as Supervisor of Administrative Services of the Minneapolis Water Works, and the City of Minneapolis, a municipal corporation. They allege that defendants' policies and procedures for termination of water and sewer service violate the due process and equal protection clauses of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiffs seek declaratory

and injunctive relief, as well as compensatory and punitive damages, attorney's fees, and costs. Pursuant to stipulation, this court issued a preliminary injunction by order dated July 8, 1985. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1343(3). The matter is now before the court upon plaintiffs' motion for class certification and partial summary judgment.

BACKGROUND

Plaintiffs entered into a lease to rent a single family home located in Minneapolis, Minnesota. The lease began on January 1, 1985. It provided that plaintiffs were to pay "during occupancy" for all utilities, including water.

On January 4, 1985, Freeman telephoned the Minneapolis Water Works and asked that the water bill be put in her name and that she be billed for service after January 1. A clerk at the water works recorded that any outstanding bill for water service prior to January 1 should be sent to plaintiffs' landlord. On January 9, 1985, the meter was read.

Plaintiffs apparently were not aware when they moved into the house that there was a past-due bill for water service to the premises. Neither the clerk nor the meter reader informed the plaintiffs of the delinquent bill or that they would be held responsible for it.

The Water Works mailed a "Reminder Notice" addressed to "Owner or Occupant" at the plaintiffs' address. The notice stated that there was a past-due bill for $163.83 which covered service from July 31, 1984 to October 23, 1984. Approximately two weeks later the water works mailed a "24 Hour Notice" to the plaintiffs' residence, also addressed to "Owner or Occupant." This notice demanded payment and warned that failure to respond within 24 hours would lead to shut-off without further notice. Freeman forwarded both bills to her landlord after she determined that they were for service prior to January 1, 1985. She did not notice that the second bill was a shut-off notice.

The first bill addressed to Freeman arrived sometime after February 25, 1985; it asked for payment of $268.25. Although it stated that it was for service from October 23, 1984 to January 29, 1985, the bill also included a "balance forward" from the previous billing quarter of $159.93. Freeman immediately telephoned the Water Works to ask why she was being billed for service prior to the date she moved in. She states that she offered to pay her share of the bill. An unidentified employee of the water works told her that her complaint should be directed to her landlord because it was the policy of the water works to bill the property and not the consumer. Freeman then asked for an accounting of charges for service from January 2, and was told that she would be sent such a bill in her name.

Another "Reminder Notice," identical to the first, was mailed to plaintiffs about April 5. On April 18, 1985, they received another "24 Hour Notice" addressed to "Owner or Occupant." They did not open this bill but intended to send it to their landlord.

On May 1, defendants terminated water and sewer service to the plaintiffs' home. The Water Works states that the shut-off occurred because neither the plaintiffs nor their landlord made any payments on their water bill from January 1, 1985 through May 1, 1985. It also asserts that after mid-February of 1985 no one offered any explanation why no part of the bill had been paid.

Freeman called the Water Works to protest the shut-off and she again offered to pay her portion of the bill. She was informed that service would be restored only if she paid the total amount due since July 31, 1984. Plaintiffs state that in a subsequent call, the Water Works told Freeman that it was the policy to bill the property without regard to personal liability. They state that they were not given oral or written notice that they had a right to contest the bills or the shut-off. Nor were they informed of the existence or availability of any established administrative procedure for doing so.

Plaintiffs' attorney began to prepare this lawsuit, and a motion for a temporary restraining order (TRO) was scheduled for May 16, 1984. On May 16, defendants agreed to restore service to the plaintiffs pending litigation of their claims, and plaintiffs dismissed their motion for a TRO. On June 26, this court entered a preliminary injunction pursuant to stipulation. Under the injunction, the defendants revised their notice procedures and implemented an interim administrative hearing procedure. They also agreed to discontinue their policy of conditioning service to customers on the payment of delinquent bills owed by prior owners or occupants of the serviced property.

On February 28, 1986, following several months of negotiation between plaintiffs' counsel and the City Attorney, the Minneapolis City Council adopted a new ordinance which contains detailed provisions for pre-termination notices and administrative hearings.

## DISCUSSION

### Class Certification

■ Plaintiffs contend that their action satisfies all of the requirements of Fed.R. Civ.P. 23 and that class certification is therefore appropriate. To qualify for class certification under Rule 23(b)(2), the action must satisfy all the requirements of Rule 23(a) and (b)(2).

Defendants appear to concede that plaintiffs have satisfied the four requirements of Rule 23(a). Plaintiffs have demonstrated that there are more than 100,000 metered water accounts in Minneapolis making joinder of the members of the class impractical. They have met the commonality requirements of Rule 23(a)(2) by showing that each member's claim involves the question of whether defendants' practices for terminating water service are unconstitutional. The claims of plaintiffs stem from the same legal theories as the claims of other class members and are typical of the claims of the class under 23(a)(3).[1] Finally, Rule 23(a)(4) is satisfied. Plaintiffs share the class' interest in requiring defendants to comply with the injunction and the terms of the new ordinance. Their attorneys are well-qualified to prosecute the interests of the class.

Defendants claim, however, that a class action for injunctive relief is not appropriate under Rule 23(b)(2). They contend that they have not "refused to act" as required in Rule 23(b)(2), but rather have taken voluntary action which resolves the conflict. Defendants maintain that the new ordinance provides all necessary relief, mooting the motion for certification. Further, they assert that if plaintiffs obtain injunctive relief, it will benefit all potential class members making an injunction unnecessary.

After carefully considering these arguments, the court finds that class certification is appropriate. All of the actions taken by defendants, including adoption of a new ordinance, were the type of action to which Rule 23(b)(2) is addressed. While defendants have not "refused to act," they clearly have "acted" on grounds generally applicable to the class. If it were apparent that defendants' adoption of the new ordinance had provided all necessary relief, the issue might very well be moot. The record shows, however, that problems similar to those encountered by Freeman and Bissonnette are still occurring. *See* aff. Lawrence Pry. Defendant concedes that it will take time to train the personnel responsible for administering the new procedures. It appears therefore, that class certification

1. The requirements for typicality under 23(a)(3) have generally been treated summarily by courts, and are often merged with the commonality requirements of 23(a)(2). *See, e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Eighth Circuit, however, has required an additional showing that there actually are other members of the class with the same claim as the representatives. *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1062 (8th Cir.1975). *See also Donaldson v. Pillsbury Co.,* 554 F.2d 825 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). Plaintiffs here have made this showing by pointing to named individuals at the hearing. *See* aff. of Lawrence Pry.

of past and present customers of the Water Works is needed to enforce a final judgment in this case. Class certification is also necessary to avoid multiple actions and needless relitigation of liability. Absent certification, any person who should subsequently bring an action for damages would be forced to relitigate the issue of liability. Additionally, there has been no showing that class certification would be unduly burdensome to the defendants. For these reasons, the court finds that the motion for class certification under Fed.R.Civ.P. 23 should be granted.

*Partial Summary Judgment*

■ Plaintiffs seek partial summary judgment on the issue of liability alone. They contend that prior to February 28, 1986, defendants had a policy of holding present users responsible for the bills of past users in violation of the due process and equal protection clauses of the Fourteenth Amendment. Additionally, plaintiffs claim that the procedures employed by defendants in notifying customers and terminating their water service, violated their procedural and substantive due process rights, as well as their right to equal protection.

Defendants contend that factual questions exist which make summary judgment inappropriate. They claim that issues of fact remain as to what exactly were the policies and procedures of the water department and whether there were any constitutional violations of the plaintiffs' rights when the plaintiffs failed to open written notices or call the designated phone number. The record shows, however, that these contentions do not raise a genuine issue of material fact. There is no factual issue as to what notices and bills were sent to the plaintiffs at their residence or what the contents of these notices and bills were. Nor is there a material issue as to the plaintiffs' failure to open some of the notices and bills. If the notices were inadequate as a matter of law then it does not

matter if plaintiffs actually opened them or not.

*A. Due Process*

■ Plaintiffs claim that defendants' water termination policies violate the due process clause. They rely on *Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), which found that similar water termination policies and procedures violated due process clause. Defendants assert, by contrast, that *Memphis Light* is inapplicable because plaintiffs have failed to establish that continued water service is a property interest under Minnesota law. They note that the Minnesota Supreme Court has never explicitly held that continued water service is a constitutionally protected property interest.

To come within the protection of the due process clause, plaintiffs must assert a "legitimate claim of entitlement" to a "property" interest.[2] *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). These property interests can be created by state law. *Id.* at 577, 92 S.Ct. at 2709; *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). In *Memphis Light* the Court held that since Tennessee case law had established that utilities could not terminate service except for cause, the plaintiffs were able to assert a legitimate claim of entitlement. 436 U.S. at 11, 98 S.Ct. at 1561.

While the Minnesota Supreme Court has never explicitly held that continued water service is a constitutionally protected property interest, case law in Minnesota provides that termination of a municipal utility service must be with just cause. In *Cascade Motor Hotel, Inc. v. City of Duluth*, 348 N.W.2d 84 (Minn.1984), a motel owner challenged the city's decision to withhold delivery of utility services pending payment of past due bills incurred by a former owner of the premises. The Minnesota Su-

---

**2.** There is no dispute in this case that the defendants acted under color of state law and are

therefore subject to 42 U.S.C. § 1983.

preme Court invalidated the City's action as "arbitrary and unreasonable." *Id.* at 85.

Defendants argue that the *Cascade* holding is based solely on contract law and that it therefore cannot support a finding that continued water service is a property interest under Minnesota law. Defendants misinterpret the main thrust of that case, however. The *Cascade* court specifically struck down a termination practice nearly identical to that employed here on the grounds of the reasonableness of the municipal ordinance. 348 N.W.2d at 85. The Minnesota Supreme Court found that failure to pay someone else's bill was not a sufficient or reasonable cause for which to terminate water service.

Moreover, it has long been the rule in Minnesota that public utility rules for termination of service to a customer who defaults on payment must be reasonable. The utility may not discontinue service to a customer for any or no reason at all. *Siegel v. Minneapolis Gas Co.,* 271 Minn. 127, 135 N.W.2d 60 (1965); *Prudential Co. v. City of Minneapolis,* 202 Minn. 70, 277 N.W. 351 (1938). *City of East Grand Forks v. Luck,* 97 Minn. 373, 107 N.W. 393 (1906). Given the important nature of utility services generally [3] and caselaw in Minnesota, it is evident that the plaintiffs have asserted a legitimate claim of entitlement at least equivalent to that of the plaintiffs in *Memphis Light.*

■ Because plaintiffs have a right to continued water service the Fourteenth Amendment requires that they be afforded due process before that service can be terminated. In *Memphis Light,* the court held that notice given to customers and the lack of an administrative procedure for entertaining customer complaints prior to termination violated procedural due process requirements. 436 U.S. at 14, 16, 98 S.Ct.

at 1563, 1564. The Court stated that notice "does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." 436 U.S. at 15, 98 S.Ct. at 1563.

The notification procedure employed by defendants involved sending several notices and bills which required the customer to pay delinquent charges or be shut off. Defendants also had a policy of posting a notice on duplexes and multi-dwellings for a period prior to the actual termination. Additionally, they contend that a phone number was on the notices and that customers could settle some disputes by calling it. It is undisputed, however, that the notices contained no indication that an unwritten and informal system for voicing grievances was available to customers. The procedures allegedly available to plaintiffs were of little more substance than those in *Memphis Light.* The informal and unwritten method of appealing up the chain of command from the clerk to the city council would not meet the requirements set by the Supreme Court. *See Memphis Light* at 18. Thus, the court finds that defendants' notice procedures were constitutionally deficient.[4]

### B. Equal Protection

■ Plaintiffs also complain that the policy employed by defendants of terminating service for failure to pay another party's bill violates the Equal Protection Clause of the Fourteenth Amendment. Specifically, plaintiffs allege that the policies and practice of the defendants have divided customers of the Minneapolis Water Works into two categories: the first includes customers whose bill includes the service debt of another unrelated party; the second includes all other customers. Plaintiffs

---

**3.** *See, e.g., Lamb v. Hamblin,* 57 F.R.D. 58, 61 (D.Minn.1972) (holding that an interest in water utility service falls "within the same constitutional protections afforded welfare benefits, wages, driver's licenses, reputation in the community, and possession of personal property...." ) and *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 18, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1977).

**4.** Because the court finds that defendants' policies violated procedural due process, it need not consider plaintiffs' claims concerning substantive due process.

claim that defendants' classification scheme cannot meet the rational basis test.

Under traditional equal protection analysis, a classification must be sustained if the classification itself is "rationally related to a legitimate government interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). Defendants argue that a rational basis exists for their policies. They contend that with over 100,000 accounts, many of which are multiple dwellings with transient residents, attempting to collect from any one other than the present customer is administratively impossible. The difficulty of delinquent bill collection does not, however, provide a sufficient basis for conditioning service to new customers upon the customer's payment of accounts incurred by prior residents. The Fifth Circuit expressly rejected this same justification in *Davis v. Weir,* 497 F.2d 139, 144 (5th Cir.1974), when addressing a similar "refusal to provide service" policy of the Atlanta Water Works. The *Davis* court held that such a classification scheme violated the Equal Protection Clause. *Id.* at 144. This precedent is relevant here. The court concludes that defendants' policy to terminate service to certain customers based on the indebtedness of unrelated prior person, violates the Equal Protection Clause of the Fourteenth Amendment.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Plaintiffs' motion for class certification is granted in that a class is certified as to the equitable issues raised. The class is defined as all past and present customers of the Minneapolis Water Works.

2. Plaintiffs' motion for partial summary judgment is granted and defendants are permanently enjoined from terminating water service to plaintiffs and the class they represent as a sanction for nonpayment of a bill owed or incurred by a third party. Defendants are also enjoined from termi-

nating water and sewer service to plaintiffs and the class they represent without first providing adequate notice and hearing procedures.